J. R. LIVINGSTON *vs.* THE MAYOR, &c. OF NEW-YORK.

Where the owner of *lands in a city* sells *building lots,* bounding them by streets of a specified width, as laid down on a map, but not actually opened, the purchasers acquire a legal right as against their grantor, to have the streets kept open to the width delineated on the map

Where building lots were thus conveyed in the city of New-York, and the streets were subsequently opened by the corporation, under the act relative to the opening of streets in that city, *it was held,* that the grantor was not entitled, by way of compensation, for the land thus appropriated as streets, to more than the value of his *legal title,* subject to the *easement* belonging to the purchasers.

The provisions in the constitution of the United States, that no person shall be deprived of his property without due process of law; that private property shall not be taken for public use without just compensation, and that in suits at law, where the amount in controversy exceeds $20, the trial by jury shall be preserved, are restrictive only upon the *general government* and its officers.

The benefit accruing to a person whose land is taken for a street, by the increased value of adjacent property belonging to him, may be set off against the loss or damage sustained by him by the taking of his property for a street, and if equal to the loss or damage, is a just compensation for the property so taken.

The *trial by jury,* secured by the constitution of this state, applies only to cases of trials of issues of fact in civil and criminal proceedings in courts of justice, and has no relation to assessments of damages of the owners of property taken for streets or other public use. The mode of ascertaining such damages belonging to the legislature, they may direct the assessment by a jury, or by commissioners.

*It seems,* that if the owner of land in a city lays out the same into a town plot, dividing it into building lots, with streets running through the same, and sells such lots, that the streets thus designated will be considered as *dedicated* to the public.

ERROR from the supreme court. The corporation of the city of New-York, in the opening of two streets called *Attorney* and *Ridge* streets, took two parcels of land, the *fee* of which belonged to John R. Livingston, which the commissioners of estimate and assessment reported to be subject to the *easement of a right of way* over the same, in the parties entitled to lands and premises bounded by and fronting on the streets. The loss or damage of Mr. Livingston, in the taking of the land for *Ridge* street, was estimated at *one dollar;* and he was as-

ALBANY,
.Dec. 1831.
Livingston

v.
The Mayor of
New-York.

sessed $41,37 for benefit to adjoining lands owned by him. No damage was assessed to him for the land taken for *Attorney* street, the commissioners being of opinion that the benefit and advantage resulting to him from the opening of that street, by reason of his interest in *adjoining lands*, exceeded his loss or damage the sum of $53,96. Mr. Livingston presented *objections* to the report of the commissioners, in which he insisted, 1 That *Ridge* street not having been originally laid out by him, but the same having been taken by the corporation at an early day, and appropriated as a street, the *fee* remained in him, and he was entitled to a remuneration to the full value of the ground taken, which he estimated at $7000. The second, third and fourth objections related to the ground taken for *Attorney* street, and to the lands owned by Mr. Livingston adjoining the two streets, in respect to which he was charged with benefit over and above loss and damage. These objections were supported by affidavits of Mr. Livingston and others; in the affidavit of Mr. Livingston it was stated that the plot of ground owned by him, taken by the corporation for Ridge and Attorney streets, contained upwards of 20 lots, worth about $30,000; that such plot of ground was originally delineated on the plan or chart of the city, as a reservation for the above streets, whenever the corporation should see fit to open the same; that in consequence of the reservation of the ground for such streets, he bounded all his lots adjoining the same, which he disposed of, by such streets, in every case reserving to himself the ground so appropriated as aforesaid and all the advantages and emoluments that might accrue when the said streets should be assessed and valued by the commissioners; that he would not have made such disposition of the lots adjoining the said streets, if he had not been aware of their intended appropriation, but knowing that the corporation might at any time order the streets to be opened, he was unwilling, either by erecting buildings on the contemplated streets, or by disposing of the ground for that purpose, to impede or render it more difficult and expensive for the corporation to do so. He further stated, that in 1825 the corporation actually took possession of one of the streets called *Attorney* street, by causing a well and pump to be placed there, for

which he was assessed. The other affidavits corroborated Mr. Livingston's estimate of the value of the ground taken. On receiving these objections, the commissioners of estimate and assessment re-considered their doings, but came to the conclusion that the same required no correction. The report of the commissioners was confirmed by the supreme court. Mr. Livingston then sued out a certiorari, *issuing from the supreme court*, directed to the justices of the supreme court, *acting as commissioners* under the act of the legislature, relating to the city of New-York, passed April 9, 1813, to which a return was made, setting forth all the proceedings in the matter up to the confirmation of the report by the supreme court. The case was argued in the supreme court on such return, and the judgment of confirmation affirmed. The following opinion was delivered :

ALBANY,
Dec. 1831.

Livingston
v.
The Mayor of
New-York.

BY THE COURT. This case comes before the court on certiorari, to review the proceedings in the matter of opening Ridge and Attorney streets in the city of New-York, in which the report of the commissioners of estimate and assessment was confirmed by this court, acting under the statute of this state, regulating the mode of opening streets in that city. The commissioners reported that John R. Livingston was seized in fee of four certain pieces of land, required for the purpose of opening the said streets, subject to the easement of a right of way over the same, in the parties entitled to lands and premises, bounded by and fronting on the same. In respect to one of those pieces (required for Ridge street,) they have estimated Mr. Livingston's loss and damage, by reason of his relinquishing his interest therein at one dollar. In respect to the other piece required for Ridge street, and to both the pieces required for Attorney street, they have assessed certain sums upon him for the benefit and advantage derived to him, by reason of his ownership of certain pieces of land adjoining those pieces required for the streets, over and above his loss and damage, by reason of his relinquishing his interest in the latter.

Mr. Livingston, in his objections presented to the commissioners, and annexed to their report, states what he conceives to be the actual value of the four pieces of land taken for the

ALBANY,
Dec. 1831.

Livingston
v.
The Mayor of
New-York.

streets amounting to thirty-two thousand dollars, and claims in substance that such alleged value should have been the measure of damages allowed to him. His second, third and fourth objections assume incorrectly that the pieces of land mentioned in them were valued by the commissioners at the sums stated by him for that purpose. The report shews that in regard to those three pieces, the amount which he mentions as valuations put upon them by the commissioners, were not of that character, but were intended as their estimate of the excess of benefit derived by him as owner of the adjoining lots, over and above the damage sustained by him in losing his interest in the pieces taken for the streets. The amounts at which the commissioners valued Mr. Livingston's interest in those three pieces, do not appear in their report, nor would it have been proper for them, in conformity with the law under which they acted, to have stated any such valuations. The act, 2 R. L. 412, makes it the duty of the commissioners in cases where the benefit and advantage, in their opinion, exceeds the loss and damage, to report the excess and surplus only of such benefit, over and above such loss and damage.

There is nothing, therefore, on the face of the report in this case, so far as respects the parcels of land referred to in Mr. Livingston's second, third, and fourth objections, which can be at all impeached by those objections, or by the affidavits offered by him in opposition to the report; and it only remains to examine whether his first objection, which refers to that piece of land required for opening part of Ridge street, for relinquishing his interest in which the commissioners have allowed him but one dollar, is well founded. This piece, as appears by its description in the report, extends from Division street to Grand street; and the report states that the parties entitled to lands and premises bounded by and fronting on the same, are entitled to the easement of a right of way over it. It would appear from Mr. Livingston's own affidavit, that the parties referred to were persons deriving their titles from him, and that he had sold the lots at each side of the contemplated street, as being bounded thereby. His affidavit states, that the ground (of which he claims to be owner in fee) was originally deline-

ated on the plan or chart of the city as a reservation for these streets, whenever the corporation should see fit to open them; that in consequence of such reservation, he bounded all his lots adjoining the same, which he disposed of, by the said streets, and that he would not have made this disposition of the lots adjoining the said streets, if he had not been aware of their intended appropriation.

ALBANY,<br>Dec. 1831.<br>Livingston<br>v.<br>The Mayor of<br>New-York.

So far therefore as the facts appear, they disclose the reasons why the commissioners reported that Mr. Livingston's interest, not only in the piece of land required for that part of Ridge-street lying between Division and Grand streets, but in the other three pieces taken by their proceedings, was subject to the easement of a right of way in other parties, and shew that such easement, if it exists in law, results from Mr. Livingston's own act, in having bounded the lots of ground which he sold, by and upon land which was known to all parties to be reserved and intended for a public street, and which, for the purpose of such boundary was called a street, as delineated on a map of the city.

This court have had occasion to consider fully the legal effect of such sales upon the rights of parties. In the case of Seventeenth-street, 1 Wendell, 262, and more particularly in the case of Lewis-street, 2 Wendell, 472, the question now presented was fully discussed and examined, and in the latter case it was determined as the opinion of the court, that where lots of ground are sold bounded on a street in the city of New-York, designated as such either upon a map of the city or on a map made by the owner of the lands in reference to which the sales are made, a covenant will be implied that the purchaser shall have an easement or right of way in such street to the full extent of its dimensions, without being afterwards liable to be assessed to pay the owner for the value of the land thus appropriated, but only for the fee, subject to such easement. The court consider this case as coming within that decision, and the report of the commissioners as being made in conformity with the principle there adopted and examined at length, and adhering to that decision, they give judgment on the certiorari for the defendants.

Livingston
v.
The Mayor of
New-York.

Mr. Livingston sued out a writ of error to remove the proceedings to this court.

*H. W. Warner*, for plaintiff in error. The lands taken for streets were not subject to an easement or right of way. In the case of *Mercer-street*, 4 Cowen, 544, the supreme court decided that the mere abuttal upon a street laid down upon a map, but not actually opened, did not amount to an *implied grant of way*, where the land was accessible from a street actually opened. The case of *Seventeenth-street*, 1 Wendell, 262 was considered by the court as distinguishable from the case of *Mercer-street*, on the grounds that the owners of the lots had paid an enhanced price as a consideration for a right of way, and that the purchasers had no access to their lots from any public way but by the space called a street in their deeds; whereas, in the case of *Mercer-street* they had access to their lots from *Broadway*. This case did not overrule that of *Mercer-street*, but in the case of *Lewis-street*, 2 Wendell, 472, the decision in *Mercer-street* was overruled, and it is for this court now to say which decision shall be considered as declaring the law of the land. The last case proceeds wholly upon the *presumption*, not upon *proof* of the fact, that the purchasers of the lots paid *an enhanced price* in consideration of the lots being bounded upon a street. In indulging this presumption, it is respectfully insisted the supreme court erred. A legal presumption can arise only from facts and circumstances, and the presumption that an enhanced price was paid is not warranted by the naked fact that the lots were described as bounded on a street; as well might it be presumed that a purchaser of a lot at the intersection of four roads in a country place was made as the site of a tavern. A covenant cannot be implied from a *presumed* enhanced price; if the enhanced price is the ground of the presumption, the fact that it was paid should have been shewn, so as to enable the court to draw the conclusion that the right of way entered into the minds of the parties at the time of the contract. But why imply a *right of way* instead of a *street?* the latter may as well be implied as the former. The implied covenant, according to the decision of the court, is, that the purchaser shall have a right of way in a street when laid out.

Such covenant is prospective and wholly futile; for when the street is laid out, the purchaser wants no right of way, and being futile, it should not be presumed.

A *right of way* exists either by prescription or grant, or other agreement or licence, or *from necessity ;* and if the latter, the grantor may occupy the whole, except enough to give ingress and egress. Woolrych on Ways, 23. 9 Com. Law R. 324. 2 Pick. 574. Even where, by contract between the parties, a *street* was contemplated to exist, a lessee was held bound to be satisfied with a convenient outlet or private way. 19 Johns. R. 188. 4 Mass. R. 589. Wherefore, call the way in question a way of necessity, or a way stipulated for, the purchasers are entitled only to a way of convenience, and not to a street 70 feet wide. A way of necessity, however cannot be claimed, as for aught that appears the lots are all bounded by other streets, and access is thus had to them. The mere fact of the lots being described as bounded by a street gives no right of way; no part of the street passes, neither a fee nor an incident. 4 Mass. R. 589. 15 Johns. R. 447. 19 id. 188. 4 Cowen, 544. 1 Wendell, 262.

The act under which the compensation to the plaintiff for his land taken for streets has been assessed, is repugnant to the constitution of the United States as well as the constitution of this state. The plaintiff in error does not deny the right claimed of taking his property for public use, upon due compensation being made to him, but the objects to the mode adopted to ascertain that compensation. Private property cannot be taken for public use without just compensation ; and in suits at common law, where the value in controversy exceeds $20, the right of *trial by jury* cannot be taken away. Constitution of the U. S., Amendments, art 5 & 7. The constitution of this state, art. 7, § 7, has a similar provision in respect to the taking of private property for public use, and also provides that no person shall be deprived of his property *without due process of law.* In *England,* the writ *ad quod damnum* issues in cases of this kind, 2 Barn's Justice, 514; and on the coming in of the inquisition, a party interested may traverse it and have a jury. This writ is known to us, and the proceedings under it regulated by statute, 2 R. S. 588. In *Massachusetts,* where private

ALBANY,
Dec 1831.

Livingston
v.
The Mayor of
New-York.

property is taken for public use, notice of the preliminary proceedings is given to the parties to be affected, 6 Mass. R. 251. The proceeding by commissioners of estimate and assessment is an *ex parte* proceeding, unknown to the common law ; the commissioners view the premises and examine witnesses, or omit to do so, as they think proper. As the property of an individual can be taken only by *due process of law*, there should be a court and a jury to pass upon the subject, so that the rights of parties may be duly guarded. Again ; the compensation to be made is to be a *just* compensation, not a prospective and conjectural benefit and advantage to the adjoining lands of the owner, by reason of the street being opened ; in this way no compensation whatever is made for the property taken. The owner of land cannot be compelled to pay for improvements of his property, made without his consent, 2 Kent's Comm. 271 :, and yet, if the benefit to adjoining lands may be set off against property taken for a street, he is virtually compelled to pay for the improvements. Nothing but the value of the property awarded to him *in money* is a just compensation. Appropriations of private property to public use are constitutional, legal and justifiable, only where a fair and just equivalent is awarded to the owner of the property. 17 Johns. R. 215. 1 Bay, 252. 3 Dallas, 387.

*R. Emmett*, for the defendants in error. The provisions in the constitution of the *United States* apply only to cases arising under the laws of. the *general*, and not of *state* governments. None of the provisions of the constitution of this state relative to the taking of private property for public use, or to the trial by jury, have been violated by the passage of the act under which these proceedings have been had. Under the colonial government, compensation to owners of property taken for public use was assessed sometimes by a jury and sometimes by commissioners. Since the adoption of the first constitution in this state, private property has been taken for public use without the intervention of a *jury* and down to the present day the principle has been ratified by repeated and numberless acts of legislation, particularly in 1826, when, after a full report upon the subject, to be found in the *Journals of the Senate*, page 368, the mode of assessment of damage, oth-

erwise than by the intervention of a jury, was deliberately sanctioned. Besides, in partition, in account, in references and on demurrer, the rights of parties are determined, and yet no jury is empannelled. What shall be deemed due process of law must depend upon the practice of courts regulated by law. If the objection of the want of a jury was to prevail, all equity jurisdiction would be destroyed; and sales of lands for taxes would be unlawful. The provision in the constitution that no *new court* shall be institutued but such as shall proceed according to the course of the common law, admits that there were courts then in existence which did not so proceed; as for instance, the court of special sessions, which has been adjudged not to be inconsistent with the constitutional provision in relation to trials by jury. The property of the plaintiff in error having been taken under the provisions of a statute, he cannot complain that it was taken unsanctioned by the law of the land. Acts of the legislature authorizing the taking of private property for public use, and providing for the assessment of damages otherwise than by a jury, have been repeatedly adjudged to be constitutional, and even that such property might be taken before compensation ascertained or made. 20 Johns. R. 744. 7 Johns. C. R. 315. 5 Cowen, 541. 6 id. 525. 4 Wheaton, 652. 6 id. 595. The writ *ad quoad damnum* might properly issue where property was taken for a market or the like, in which but few persons were interested, but if it were required to issue in the opening of streets where many persons were concerned, it would be extremely inconvenient, dilatory and expensive. As to the species of compensation, whether in benefit and advantage to adjoining property belonging to the owner of the land taken, or in money to be paid to him, the provision in the constitution is complied with, when it is manifest that the party has sustained no damage; and such is the case where the benefit is equal to the loss. All that is required is that just compensation shall be made, not that the value of the land shall be paid in money; where there is no damage, there is nothing to be paid.

The plaintiff in error, previous to the proceedings in this matter, had *dedicated* the premises as public highways, which may be created by the acts of parties or by adverse proceed-

ings. Public *user*, with the asent of the owner, has such effect; any act amounting to a dedication is enough, and in such case, lapse of time is immaterial. The facts that the party sold lots bounding them on the streets in question; that the streets were designated on a map as long since as 1803, and that since that period the party had permitted them to lay unoccupied; had suffered a well to be sunk, and had submitted to be assessed for the expense of it, are strong evidence of dedication. So also will streets be considered as dedicated to public use where the acts of a party would. otherwise operate as a fraud upon others, where the streets not considered as so dedicated. Matthews on Presumptive Ev. 333. 5 Taunton, 137. 1 Campb. 260. Strange, 1004. 11 East, 374, *n.*

*D..B. Ogden,* on the same side. By designating the streets in question on a public map of the city, as long since as 1803, the faith of Mr. Livingston was pledged that they should be so considered, and such act followed up by the facts of permitting a well to be sunk, submitting to an assessment for the expense, and bounding the lots sold by him on such streets, amounted to a dedication. Every deed thus bounded was a. recognition of the streets, and Livingston, after selling the lots, could not close them; had he attempted it, he might have been enjoined, on the ground of fraud.

The provisions of the constitution of the United States have no application to this matter. As to the state constitution: the provision in relation to trials by jury relates to *issues,* civil or criminal, and not to a proceeding of this king; and the provision that compensation shall be made for private property taken for public use has been complied with. The constitution requires that the owner shall receive just compensation, not that he shall be paid in money the value of the land taken; he is to be indemnified. Blackstone says, the public cannot take the lands of an individual without giving him an equivalent therefor, not that they shall pay him the value thereof. 1 Black. Comm. 138. The plaintiff in error was not entitled to receive the value of the land, but only compensation for his interest in the fee, subject to the easement of a right of way in others. Have the legislature provided a constitutional mode

of ascertaining the equivalent to be paid ? They are to make the provision, and of course it is in their discretion to prescribe the mode in which it shall be done. . A jury is not necessarily to be summoned; any other mode in which the damages may be ascertained is equally proper. Here commissioners are appointed by the supreme court, and their doings are subject to the review of that court. In England damages for taking materials to repair roads are assessed by a. justice of the peace. . 2 Burns, 500. But allowing there was room for doubt whether in cases of this kind the damages of an owner of land taken for public use ought not to be assessed by a jury, the practice of our government for half a century must put such doubt at rest. If the act in question is unconstitutional, then most, if not all, our turnpike road incorporations are unconstitutional, and the court will long hesitate before they arrive at a conclusion involving such disastrous consequences as would ensue upon such a determination.

A. Van Vechten, in reply. By the constitution of this state, adopted in 1777, it is declared that " trial by jury in all cases in which it hath *heretofore been used in the colony* of New-York, shall be established and remain inviolate forever." 1 R. L. 39, § 41. The provision in the new constitution is essentially the same. 1 R. S. 52, § 2. The uniform practice under the colonial government, when private property was taken for public use, was to have the damages assessed by a *jury. Van Schaick's edition of the laws of the Colony pages* 166, 263, 408, 661, 722, 774, 793. . Such also was the practice subsequent to the adoption of the constitution *Jones* and *Varick's ed. of the Laws, page* 139, when the law to establish the Western Inland Lock Navigation Company was passed in 1792, the assessment of damages by a *jury* was provided for. A similar provision was contained in the act to widen and extend Canal street, in the city of New-York, passed in 1799. In 1808, when a cession to the general government of lands near the city of New-York was about to be made, the writ *ad quod damnum* was directed to be issued. Such also was the law relatiue to taking private property for public use in the city of New-York, until the act was passed under which these pro-

ALBANY,
Dec. 1831.

Livingston
v.
The Mayor of
New-York.

ceedings were had, and such .is still the law in the city of Al-
bany and other incorporated towns.   The substitution of *com-*
*missioners* of estimate and assessment for a *jury* was a depar-
ture from established practice, and a violation of the constitu-
tion.   The trial by jury was not reserved solely for the *trial of*
*issues;* it was declared it should remain inviolate *in all cases*
in which it had theretofore been used.  It is not contended that
trial by jury can be claimed in prosecutions for petty offences,
because such offences were tried under the colonial govern-
ment without a jury; nor that it can be insisted on in the mak-
ing of partition, or in cases of reference, because the practice in
those cases was the same formerly as it is now.   Van Schaick's
ed. of Laws, 240, 242, 386, 388, 408, 517. 770.   As to courts
of equity, they existed under the old, and are recognized in
the new constitution.   In the colonial laws no provision is
found relative to compensation for lands taken for public roads,
because then there was a reservation of 5 acres for such pur-
poses in every 100 acres granted, but when improved or culti-
vated lands were authorized to be taken for public purposes,
the legislature provided that the damages should be assessed
by a jury.   It is admitted that in the acts incorporating our
turnpike road companies, and in some other instances, a dif-
ferent mode of assessing damages has been adopted; but such
new mode was an innovation upon the constitution, and upon
the established usage under it.   The number of those acts, if
illegal, will not influence the judgment of this court, nor will
they be deterred from pronouncing the law on this subject, from
a dread of the consequences which probably are more imagi-
nary than real, as parties whose lands have been taken are most
probably precluded by acquiescence, but if not, arguments *ab*
*inconvenienti* are no answer to a constitutional objection.

As to the rule of compensation.   Setting off benefit against
damage is not making compensation for lands taken; it is con-
jectural and prospective, and leads to error.   In giving the val-
ue of the land there can be no mistake.   It is said that the
land of the plaintiff in error taken for the streets was subject
to the easement of a right of way in others, and that therefore
not more than one dollar was allowed for his loss or damage.
Where is the evidence of this right of way?  It surely is not to

be found in Mr. Livingston's affidavit ; taking the whole of it in connection, it is manifest he intended to reserve his claim for compensation whenever the streets should be opened by the corporation. So it is said there was a dedication, and that the streets in question were delineated on a map made in 1803. Whose map this was, or whether it was ever agreed to by Mr. Livingston, does not appear. Nothing is to be inferred against him from the fact that the lots were bounded by a street which the grantee as well as the grantor knew did not exist in fact. The streets are said to have been laid out in 1803, and yet in 1829, the corporation take measures for their opening. The report of the commissioners shews that at the making thereof there were no streets through the land in question ; how then could they be streets by dedication ? Admitting the purchasers of the lots to be entitled to an easement of a right of way, they had no claim to a street of ordinary width. An enhanced price paid by the purchasers of the lots as a consideration for a street, is not to be presumed ; if they purchased the street as well as the lot, they would have stipulated for it in their contracts. The presumption may be indulged with as much propriety, that the lots were sold at a *reduced,* as at an *enhanced* price.

The following opinions were delivered :

By the CHANCELLOR. There seems to be a very little dispute as to the facts in this case. But an important question arises as to the rights of the plaintiff in error, as against the persons to whom he had conveyed certain building lots in the city of New-York. His counsel have also raised and argued several constitutional objections to the mode in which damages are directed to be assessed by the laws regulating the laying out and altering streets in that city, which it will be necessary briefly to consider.

Some twenty or thirty years since, the plaintiff in error was the owner of a tract of land in New-York which was laid out into city lots, and delineated on the city map, with streets running through the same in different directions, in the manner in which city and town plots are usually laid out and delineat-

ed. A great portion of these lots, lying in different parts of the tract, were sold by the plaintiff from time to time to various individuals for building lots ; and in the conveyances were described as bounding on the streets adjacent thereto, as laid down on the city map. It does not appear by whom the original plan or allotment of this tract was made ; neither does it seem to be very material. The streets laid down upon the map were not public highways, but there can be no doubt that the lots were sold by the plaintiff and purchased by the grantees with reference to the city map, and under the expectation that they were ultimately to be used. as building lots. The plaintiff, in his affidavit says, that in consequence of the reservation of particular portions of the land for streets, whenever the corporation of the city should see fit to open the same, he bounded all the lots which he disposed of upon the said streets adjoining the same, in every case reserving to himself the ground appropriated for the streets, and all the advantages and emoluments which might accrue when the streets should be assessed and valued by the corporation. I presume the plaintiff did not intend to swear that each conveyance, executed by him, contained such reservation in express terms, but that such is his opinion of the legal effect of the conveyances of the lots bounding them by the streets. The commissioners of estimate and assessment came to a different conclusion as to the legal effect of the conveyances, and they accordingly reported that the plaintiff was the owner of the several pieces of land appropriated for streets, but subject to the easement or right of way over the same in the parties entitled to lands and premises bounded by and fronting on these streets.

It cannot be necessary to examine the question, whether by implication of law, a legal right of way was granted to the purchasers of lots bounded on these streets ; neither do the principles of construction, applicable to grants of property in the country, apply to conveyances of city lots. The right of way as a mere *rural* servitude, is confined to a convenient passage from the property granted, to the public road or highway. As this is all that is usually wanted for the use of the premises granted, although the lot is bounded upon several roads, the law gives to the grantee nothing more than convenient passa-

ges to and from the premises granted; but upon the same principle on which the law implies a grant of a convenient way as incident to a lot or farm in the country, the grant of a building lot in the city, described in the conveyance, or in the town plot to which it refers, as bounded by streets or alleys of a certain width, implies a right in the grantee to have the street kept open in front of his lot for the benefit of light and air, as well as for a mere passage to and from the premises; if it is bounded by a street or alley in the rear, the grantee is entitled to have that kept open also for the same purposes of light and air, as well as for a necessary passage to the rear of his building, or to his garden or stables. Where the owner of city property has sold portions of the same for building lots, with reference to a city plan, a court of equity would not permit him to shut up the streets adjacent to the lots granted, without an express or implied reservation of such a right. It is therefore not very material to inquire whether the right to have these streets kept open for the benefit of the plaintiff's grantees was a legal right, implied by the terms of the grant, or whether it was a mere equitable right, arising from the situation and nature of the property granted. I am inclined to think, however, if the lots are conveyed as bounded by these streets, or with reference to the city map, which showed they were bounded by streets of a particular width, the grantees acquired a legal right as against the grantor, to have those streets kept open for the benefit of the property granted; and in either point of view, the plaintiff had no equitable claim to charge his grantees or their assigns with the full value of these streets, estimating them as building lots. All that he had any right to claim was the value of the streets to him, subject to the right of his grantees to have them permanently kept open; in other words, the mere value of the legal title, subject to this easement, or *urban* servitude. If this is all the damrge he is entitled to claim, I presume it will not be disputed that his damages by having the property converted into public, instead of private streets, is merely nominal.

But it is said that the law which authorizes the taking of private property in the city of New-York for a public street is unconstitutional, on the ground that the legislature cannot author-

ize private property to be taken for public use without the intervention of a jury. If the plaintiff is right on this point, then no damages could be awarded to him, and his right to the street remains as it was before the commencement of these proceedings; and all the streets which have been laid out in the city of New-York for the last 20 years are wholly unauthorized and invalid, except in those cases where the owners of the land have voluntarily given up their property for the use of streets. I apprehend, however, this court will not arrive at such a conclusion. The assessment of damages by *commissioners*, instead of a *jury*, is supposed to be in violation of those amendments of the constitution of the United States which provide that no person shall be deprived of his property without due process of law; that private property shall not be taken for public use without just compensation; and that in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. I have formerly had occasion to examine the question how far these amendments of the constitution of the United States were restrictive upon the power of the individual states; and the conclusion at which I arrived was, that all the amendments adopted by congress at its first session, and afterwards sanctioned by the requisite number of states, were intended to be restrictive upon the government of the United States and upon its officers exclusively. See *Jackson* v. *Wood*, 2 Cowen, 818, n. b. The preamble which was prefixed to these amendments, as adopted by congress, is important to show in what light that body considered them. This preamble has not usually been published in connection with these amendments; it will be found in the journal of the federal convention, as published in conformity to a resolution of congress, and is as follows: "The conventions of a number of the states having at the time of their adopting the constitution expressed a desire, in order to prevent misconstruction or abuse of its powers, that further declaratory and restrictive clauses should be added; and as extending the grounds of public confidence in the government will best ensure the beneficent ends of its institution: resolved," &c. that the following articles be proposed, &c. When we take into considera-

tion the fact that this preamble was added by the senate, after they had amended the resolution of the house by expunging therefrom the only article proposed as restrictive upon the powers of the states ; and when it is known that these amendments were introduced into congress by Mr. Madison ; in consequence of the objections which had been made in the state conventions to the unlimited powers given by the constitution to the general government, I think it is very evident that the amendments were intended to apply to the general government only, for the purpose of restricting and limiting its powers, but without any intention of limiting or controlling state legislation. But as the same provisions substantially are now contained in the constitution of this state, it becomes necessary to inquire whether there is any thing in the manner in which the property of individuals is taken for public streets in the city of New-York, or in the mode of ascertaining compensation therefor, which conflicts with the provisions of that instrument.

ALBANY,
Dec. 1831.

Livingston
v.
The Mayor of
New-York.

It is not denied that the legislature have the power to authorize the taking of private property for the purpose of public streets, upon making just compensation to the owners ; but it is insisted by the plaintiff's counsel that the increased value of adjacent property belonging to the same individual cannot be set off against the loss or damage sustained by him in taking his property for a street, and be considered as a just compensation for the property so taken ; and that in all cases the damage must be ascertained by the verdict of a jury. I have recently had occasion to examine these questions also, in the case of *Beekman* v. *The Saratoga and Schenectady RailRoad Company*, (which is not yet reported,) and came to the conclusion that both of these objections were untenable. The owner of the property taken is entitled to a full compensation for the damage he sustains thereby, but if the taking of his property for the public improvement is a benefit rather than an injury to him, he certainly has no equitable claim to damages. Besides, it is a well settled principle, that where any particular county, district or neighborhood is exclusively benefitted by a public improvement, the inhabitants of that

district may be taxed for the whole expenses of the improvement, and in proportion to the supposed benefit received by each. In this case, if the whole value of the property taken for a street in the city of New-York is allowed to the individual owner, the proprietors of the adjacent lots must be assessed for the purpose of paying that amount, and if the individual whose property is taken is the owner of a lot adjacent, that lot must be assessed rateably with the others. It therefore makes no difference whether he is allowed the whole value of the property taken in the first instance, and is assessed for his portion of the damage, or whether the one sum is offset against the other in the first place, and the balance only is allowed.

The mode of ascertaining damages by *commissioners*, had been extensively practiced in this state previous to the adoption of the new constitution. As this was well known to the members of the convention who framed that instrument, and to the people who adopted it, when they directed that private property should not be taken for public use without just compensation, but said nothing as to the manner in which such compensation should be ascertained, it is to be presumed they intended to leave that subject to the discretion of the legislature, to be regulated in such manner as might be prescribed by law.

The provision of the constitution relative to the trial by jury relates to the trial of issues of fact, in civil and criminal proceedings in courts of justice, and has no relation to cases of this kind. Although damages have frequently been ascertained by the oaths of twelve freeholders, both before and since the adoption of the constitution, yet these are not jury trials within the spirit or meaning of that provision.

I am therefore of opinion that the plaintiff in error has received full compensation for the land taken for the street, by the enhanced value which he must have obtained on the sale of the lots adjacent to the same, and that the amount of nominal damages, to which he was probably entitled, has been legally ascertained and allowed to him in the report of the commissioners of estimate and assessment. The judgment of the supreme court should therefore be affirmed.

By Mr. Senator SHERMAN: By the return to the writ of error in this case, it appear that *Ridge* and *Attorney* streets were to be opened from Division street, past Grand to Broom street, a distance of about 590 feet in Attorney, and 463 feet in Ridge street, running parallel with each other, distant one block apart, and extending two blocks in length, making four sections of streets, by being intersected by Grand and Broome streets. These blocks have long been more or less improved and built upon by the owners of lots, and are now principally covered with buildings. The whole of the ground was originally owned by John R. Livingston, the plaintiff in error, and he still continues to be the owner of several lots in some of the blocks fronting on these streets, but in the section of Ridge street, between Division and Grand streets, he is not the owner of any lot, having sold out the whole of his interest in fee.

Although the proceeding by the corporation purports to be the opening of these streets, it is a proceeding more on paper than in fact, for the streets have been opened, and travelled, and used, for a great number of years. But the proceeding became necessary to settle and extinguish individual claims, and to vest the title of these streets in the corporation. It was likewise necessary to justify the corporation in pitching, paving, and keeping them in repair, at the public expense, for the accommodation of the inhabitants residing on the lots fronting on these streets. Doubts were entertained whether this could legally be done without Mr. Livingston's consent, if the fee of the street is in him; for it appears to be settled law, that an interference with the soil of a road or street, or even the cutting down of a tree growing on the same by one person, when the fee is in another, is a trespass.

By the statute under which the commissioners proceeded, it became their duty to estimate the damage for the ground taken for the street, and to award to the owner a just compensation for the same, according to his interest therein ; and whatever such damage shall amount to, is required by the act to be assessed upon, and paid by the present owners of lots and houses fronting on the streets, or being within half blocks each way. The commissioners estimated the damage of the

*Margin note:* ALBANY, Dec. 1831.

Livingston
v.
The Mayor of New-York.

plaintiff in error for his interest in the ground of these streets as *nominal*, whereas he claimed to be paid the full value of the ground, and at the rate adjoining lots were selling for.

In order to arrive at the proper conclusion in ascertaining the rights of the parties in this case, two inquiries necessarily present themselves for consideration: 1. Were these streets dedicated previous to the appointment of commissioners, by the acts of Mr. Livingston and the operation of law? 2. Did the fee of the streets belong to Mr. Livingston, or to the owners of the adjoining lots, as incident or appurtenant to their grants? Some facts were conceded in argument, explanatory of the case on both sides. The plaintiff in error states in his affidavit, that this plot of ground was originally delineated on the chart of the city as reservations for the streets in question, whenever the corporation should see fit to open the same; and by a reference to this chart or map referred to in argument, it appeared to bear date in 1803, was put on file at the request of Mr. Livingston, and that afterwards he began selling off lots, giving deeds in fee simple to the purchasers, and bounding them by these streets according to the map on file. The streets were thrown open, and the grantees of lots went on building and improving on the line of these streets, from the commencement down to the present day. It does not appear that the corporation did any thing in relation to the opening of these streets, except permitting a map to be made of them, according to the plan agreed upon. They had no authority to open them, or to remove the fences. From all that appeared, the fair inference to my mind is, that these streets have been opened and used with the consent and approbation of Mr. Livingston, for twenty years and more. It was according to the common experience of the conduct of men, that he should encourage and promote the opening of these streets, as the population of the city extended out upon the island, so as to render unproductive fields available by the sale and improvement of lots. And it is very evident that these streets, and the individuals who were induced to purchase the lots, and expend their money in building upon them, enhanced the value of his property. It would be, to my mind, an act of injustice, to compel these purchasers to pay for a right of way,

which I think, included in their contracts and paid for, on re-
ceiving their deeds.   I presume it is not doubted that each
purchaser of a lot has a right of way over the land of the grant-
or, where it surrounds him, whether open or closed, to and
from a public highway.   This principle, it is true, is applica-
ble to the grantees only.

But the more important question is, has there been in this
case what the law calls a *dedication* of these streets, not only
to the grantees, but to the public at large?   There are two
modes of establishing the dedication of a street : one by length
of time, the other by an act so unequivocal in its nature as to
require no time to warrant a presumption.   In 11 East, 376,
and in 1 Burr. 133, it was decided that where a person suffers
a piece of ground to remain open, and permits it to be used as
a public thoroughfare for a number of years, he shall be pre-
sumed to have abandoned it to the public.   Formerly, *twenty*
years was thought necessary, but it was afterwards decided
that *twelve*, and subsequently *eight* years use of a highway was
sufficient length of time to authorize the presumption of a ded-
ication.   In *Rex* v. *Lloyd*, 1 Campb. N. P. 260, it was held,
if the owner of ground throws open a passage, and neither
marks, by putting up any visible bar or distinction, that he
means to preserve all his rights, nor excludes persons from pass-
ing over it, he shall be presumed to have dedicated it as a pub-
lic way.   In Strange, 1004, it was held a sufficient dedication
that the plaintiff some years since had built a street upon his
own ground, which had ever since been used as a highway ;
but that trespass might be maintained for an injury done to
the soil, the plaintiff being the owner of the adjoining ground.
In *Woodyn* v. *Haddan*, 5 Taunt. 125, Chambre, justice, says,
" No particular time in this case is necessary, as evidence of
dedication ; it is not like a grant presumed from length of
time.   If the act of dedication is unequivocal, it may take
place immediately ; as for instance, if a man builds a row of
houses on each side of a strip of ground, making it a street
leading into another street, and sells or lets these houses, it is
instantly a dedication, and a public highway.   If it be not so,
every one that passes over it is a trespasser, unless he gets the
owner's consent."   On either ground, I think there was a clear

dedication of the easement, or right of way to the public. On the score of length of time, the case will justify a user, by the permission of the plaintiff, for something like twenty years; and on the other hand, by making these strips of ground streets, laying out lots fronting on both sides, selling them, and by buildings being immediately put up by the purchasers, the facts, in my opinion, are sufficient to constitute a dedication at the time.

The first case reported in our books of a dedication of a street in the city of New-York is that of Mercer street, in 4 Cowen, 542, which was referred to by counsel, as one which the judges themselves say was decided upon an erroneous principle, arising from the want of a more full developement of facts, and thorough examination of the principle. This decision was made in 1828, and in the case of Lewis street, the decision was corrected by the same court, without the intervention of the court of errors. In the case of Mercer street, the judges sent back the report of the commissioners for awarding nominal damages to the owner, intimating that the owner was entitled to the value of ordinary ground. It is very probable that had it not been for that decision, this cause would not have been brought to this court; but in the subsequent case the court went more fully into the subject, and decided that the original owner of the soil, Mr. Bayard, was entitled only to nominal damages. It was there made a question whether he was entitled to the fee. The facts in that case were somewhat different from this, though the principle was the same. Mr. Bayard had opened a street through his ground about four or five years before, and sold off his lots fronting on the same; and the doubt which appeared to exist was whether it had become a thoroughfare or highway, and in whom was the fee of the road. My impression in that case is, that he had parted with the fee as well as the right of way. But the subsequent case of Lewis street, 2 Wendell, 472, again decided the principle in favor of nominal damages.

Another question raised in argument in this case is, in whom was the fee of these streets at the time the commissioners were appointed? Was it in Mr. Livingston, throughout the whole extent of the streets, or only co-extensive with his

ownership of adjoining ground ? A man may have a right of way, without having an interest in the fee; and if such a person interferes with the soil under the surface, or uses it in any other way than for passing and re-passing, he is responsible as a trespasser to the owner of the fee.   Coke says, 2 Inst. 705, "the fee of the road is in the lord of the manor, or the land owners on both sides of the way;" and the same doctrine is recognized in 1 Burr. 145.   In the case of *Jackson, ex dem. Yates*, v. *Hathway*, 15 Johns. R. 447, the court say that the fee is in the owner of the soil adjoining, and he may maintain trespass or ejectment, and exercise all rights and powers not inconsistent with the right of way ; if he sells it by boundaries that exclude the road, the fee in the road does not pass as an incident, but if he bounds it on the *side of the road,* or *along a highway,* or *upon a highway,* or *running to a highway,* there is reason to intend the party meant the middle of the highway.   In 6 Mass. R. 454, the owner of the adjoining ground brought trespass, for stopping up a drain under a road; he was a purchaser in fee, by an ordinary deed from a former owner, and it was decided that he was entitled to the fee of the road, subject to the easement, and might sink a drain, or construct a water course for a mill across the road below the surface, as he owned on both sides, and might, maintain trespass for disturbing them.   In 3 Mason, 280, Judge Story, speaking of this principle, say the good sense of this doctrine is, that under the grant of a thing, whatever is parcel of it, or necessary to its beneficial enjoyment, or in common intendment is included in it, passes to the grantee."   In 1 Day's R. 103, the subject is fully examined, and it is there held, that when the owner of the adjoining soil sells to the grantee by the usual deed of seisin and warranty, he takes the right of soil in the highway, subject to the public right of passage ; and that although there was a clause in the deed saving and excepting the highway, it was decided not to be a reservation of the fee of the road, it being held to be inconsistent and void.   Several other cases, 1 Yates, 167, 9 Serg. & Rawle, 9, 1 Pick. 122, go to establish the same doctrine.   In these cases it is held that the owners of the soil on each side

ALBANY,
Dec. 1831.

Livingston
v.
The Mayor of
New-York.

take the fee, as appurtenant to the grant, each to the middle of the road, or *ad filum viæ*, and is similar to a grant bounded by a river not navigable, as decided in 15 Johns. R. 195.

It is unreasonable that an owner who has sold his ground adjoining a road or street, should retain what can be of no use to him—the right of bringing trespass for injuries to the soil; but it is important to the owner, who has an immediate interest in the preservation of the road, and often under the necessity of using the soil, taking earth and stones, putting down trees, making drains and vaults, and for a variety of other purposes. Nothing would appear more unreasonable than that he should be subject to an action of trespass for so doing. This principle does not apply to the whole extent of these streets, but as far as the plaintiff sold out adjoining ground so far, in my opinion, the fee of the street is in the present owners. What kind of a reservation Mr. Livingston made as alluded to in the case—what was its nature, or whether he made any reservation of the fee, does not appear, and was denied in argument. If this doctrine applies to that section of Ridge street, between Division and Grand streets, where Mr. Livingston owned no adjoining ground, then he has received an adequate, if not more than an adequate compensation.

As to the constitutional question, I admit that taking a man's property without his consent, is one of the highest powers that is exercised under the constitution, and ought to be used with great caution. Yet such are the terms of that instrument or compact, made by the sovereign people of this state, of whom Mr. Livingston is one, that private property may be taken for public purposes, on making a just compensation therefor. This compact has been re-confined by the people since the passage of the act in question. The next inquiry is, has this property been taken by due process of law, and has a just compensation been made therefor? On this last point I have given my views. On the other I am of opinion, that if the mode of taking rests with the legislature, and they have prescribed one which operates alike on all whom it affects, and is not individual or partial, that it is valid, and embraced within the constitutional limits.

Without entering further into this inquiry, I must say that the arguments advanced are not sufficient to convince my mind that the law under which the commissioners acted is invalid. The law has been so long recognized by the state courts, and by various acts of the legislature, and the principle introduced into so many other laws, that I should require other and stronger reasons than those urged in argument, to convince my mind of its unconstitutionality; the effect of which would probably be to throw open to litigation all acts done under the same, for the twenty years it has been in operation. I am of opinion that justice has been done in this case, and am therefore in favor of affirming the judgment.

The court being unanimously of the opinion that the judgment of the supreme court ought to be affirmed, it was *affirmed* accordingly.