Clark v. City of Elizabeth.

SAMUEL N. CLARK v. THE CITY OF ELIZABETH.

1. The adoption of a map or plan made by commissioners appointed by the legislature, or under legislative authority, by conveying and bounding, with reference thereto, is a dedication of the lands of the owner within the lines of the street laid down on said map, and referred to in the conveyance.

2. On opening the street, no assessment of damages will be made to such land owner.

3. The deed is the best evidence of dedication, and parol evidence will not be admitted to contradict it, and show there was no intention to dedicate.

The appellant, Samuel M. Clark, owns land in the city of Elizabeth. Two lots, Nos. 22 and 26, are within the line of a proposed street, called Bayway, which was ordered to be opened by an ordinance of the common council, passed July 19th, 1870. Commissioners were appointed under the charter, (*Laws*, 1863, *p*. 146, § 96,) to assess the appellant's damages, with others, in opening said street. They reported that Clark had dedicated lots 22 and 26 to the public, and awarded no damages. An appeal was taken from the report of the commissioners to this court. An order for trial by jury, to assess the damages sustained by the appellant was made, issue framed, and a trial had in the Union Circuit Court.

For lot 26, the jury assessed the appellant's damages at $322.75 ; and upon similar proceedings as to lot No. 22, the jury assessed the appellant's damages at $1742.85.

The appellant, on the trial before the jury, offered in evidence his deed, dated June 14th, 1861, for lands in Elizabeth, including these two lots ; two maps, one of all the lands in his deed, and the other, of these lots and the proposed street ; also witnesses to prove his damages and benefits.

The appellee offered the record of a deed from Samuel M. Clark and wife to the Central Railroad of New Jersey, dated May 25th, 1869, for a tract of land by the following description : " Beginning at a point in the division line of lands of the parties hereto, fifty feet northerly, at right angles from the centre line of the railroad of said company, as filed in the office of the Secretary of State, *and on the easterly side of Bayway, as laid down on the map of the commissioners for laying out streets, avenues, and squares in said city ;* thence easterly, parallel with said centre line, as filed in said division line, two hundred feet, to a stake ; thence northerly, at right angles, from said centre line as filed, fifty feet, to a stake ; thence westerly, parallel to said centre line as filed, seventy feet, to a stake ; thence northerly, at right angles with said centre line as filed, one hundred and fifty feet, to the southerly side of Westfield avenue, as laid down *on said map of said commissioners, for laying out streets, avenues, and squares, &c., in said city ;* thence westerly, parallel with said centre line, and in the southerly line of Westfield avenue, sixty feet to a stake ; thence westerly, parallel with said centre line as filed, seventy feet, to a stake in the *easterly side of said Bayway ;* thence southerly, *along said Bayway,* at right angles to said centre line as filed, fifty feet, to the place of beginning, containing," &c.

A reservation followed, that the land should revert to the grantor, whenever it should not be used for a depot. There was a nominal consideration of one dollar.

A witness was called as to damages and benefits. The charter and supplements ; the act approved March 3d, 1867,

entitled "An act appointing commissioners to lay out streets," &c.; ordinance of the city for laying out and opening Bayway, approved July 19th, 1870; the map made by commissioners aforesaid, filed September 26th, 1867; and the map and return of the commissioners appointed to assess, &c., were also offered by the appellee. The street directed to be opened in the ordinance, is the street called Bayway, from Rahway avenue to the city line, as the said street has been laid out by the commissioners, &c., and on a map filed by them in the office of the clerk of council. Samuel M. Clark, appellant, was called in rebuttal, and testified that " he did not design, by the reference in his deed to Bayway, to dedicate, in any sense, the land included in Bayway as a public street, and that he put it in as a boundary." This evidence was objected to, but admitted subject to the opinion of the Supreme Court as to its competency and effect.

The following questions were reserved for the consideration and adjudication of this court, with leave to make the reserved case a special verdict:

1. Whether said Samuel M. Clark, under the evidence aforesaid, had dedicated to the use of the public the said street, called Bayway, so that he is not entitled to receive remuneration and an assessment of damages upon the laying out and opening of said street, across his lands in said declaration.

2. Whether said deed of said Samuel M. Clark to the Central Railroad Company is evidence of such dedication; and, if so, whether it affords conclusive evidence thereof.

3. Or, whether the intention of the grantor therein, in respect to the making thereof, and the language therein contained, so far as it relates to the question of dedication, may be explained by parol testimony; and whether the evidence in this case, offered in that behalf, is competent, relevant, and admissible in evidence; and what is its effect, if admitted; the court to draw all inferences and conclusions of fact from the evidence offered. The court, by agreement, is to deter-

mine the two verdicts for lots 22 and 26, upon these facts and this agreement.

On rule to show cause.

Argued at February Term, 1874, before BEASLEY, Chief Justice, and Justices WOODHULL, VAN SYCKEL and SCUDDER.

For the appellant, *W. J. Magie* and *Williamson.*

For the appellee, *Ropes* and *C. Parker.*

The opinion of the court was delivered by

SCUDDER, J. The Central Railroad of New Jersey crosses the lands of the appellant, running easterly and westerly, at right angles to the street called Bayway on the commissioners map, and parallel to Westfield avenue on the north, and Grand street on the south. West Jersey avenue runs diagonally through land south of the railroad and crosses it, running northwesterly and southeasterly. South of the railroad Bayway cuts off the land called No. 22, lying between the railroad and West Jersey avenue, leaving the appellant a front of one hundred and fifteen feet on the easterly side of Bayway, between those two points. North of the railroad Bayway cuts off lot No. 26, a long slender strip of land running up to Westfield avenue, leaving fifty feet front for the railroad on the easterly side of Bayway, named in the deed, and one hundred and fifty feet front for the appellant between the railroad and Westfield avenue. The whole distance between the northerly side of the railroad and Westfield avenue, being two hundred feet.

Following the lines given by the description in the deed, it will be found that the lot conveyed to the Central Railroad Company is in the form of a cross, with the longer part running along the railroad, two hundred feet in length and fifty feet in depth, and the shorter part running from the longer

at right angles to it, one hundred and fifty feet in length by fifty feet in width, to the southerly side of Westfield avenue, and seventy feet distant from the easterly side of Bayway. The lot, therefore, left to the appellant north of the railroad, on the easterly side of Bayway is two hundred feet front and seventy feet deep; and the land remaining on the south side of the railroad, after taking off No. 22, has a front on the same side of Bayway of one hundred and fifteen feet.

This street is laid down on the commissioners' map, filed September 26th, 1867. By the act of 1867 these commissioners were appointed for two years, with the exclusive power to lay out streets, avenues and squares within the city of Elizabeth, and to close streets, &c., which had not been duly surveyed and recorded as public streets, &c., according to law. They were to cause surveys and maps to be made. Their maps, profiles, plans and surveys were to be final and conclusive, as to the city and the owners of the lands, and were to be filed, in duplicate, with the clerk of the county of Union and the clerk of the city of Elizabeth. The ends to be attained, as expressed in the act, were to secure uniformity and the permanent interests of the city in laying out streets, &c. Whenever streets, &c., were opened for public use, assessments of damages were to be made for the owners of lands taken. By act of March 31st, 1869, these powers granted to commissioners ceased, but their acts were ratified and confirmed unless vacated, altered, revised or amended by the common council, and the power was given to council to open the streets laid out by the commissioners, and appoint commissioners to assess the damages.

The question of dedication by the appellant, Samuel M. Clark, of the land included in lots 22 and 26, for a public street, by his deed to the Central Railroad Company, taken in connection with the acts of the commissioners in mapping and filing their plan, including the street called Bayway, is first presented in the points reserved. There is a distinct recognition of this street in the description of the deed. The beginning is on the easterly side of Bayway, as laid down on

the map of the commissioners. In closing the survey of the lot a stake is called for in the easterly side of said Bayway, and thence southerly along said Bayway to the beginning.

The point is somewhat different from that presented in many of the cases, where the owner of land himself plots it, and causes maps to be made and filed, and makes conveyances referring to streets there laid down. These acts have been very generally held to be conclusive evidence of his intention to dedicate such streets as public highways, and when accepted by the public they become such. The land owner is concluded by these acts, and cannot recall the dedication; while the public, by their agents and officers, are free to assume or reject the charge of accepting, making and repairing the streets as public highways. The law very justly holds that he who marks out and sells his lands, offering inducements of ready access by public thoroughfares, and prospective improvements, shall not, after he receives the price for such advantages, deprive the purchaser of the promised benefits by closing the ways, or by asking compensation for the lands taken for streets by assessments of damages, chargeable upon the very lands conveyed by him, and the persons who have made the purchases. The case is clearly within the maxim, "*Qui sentit commodum sentire debet et onus.*" After receiving the profit from the sale of his land he must bear the burden of the servitudes he has put upon it as inducements to such purchase. It is not, therefore, a license which may be revoked, but a grant which is irrevocable. This law is at rest and settled in our state, and is in agreement with the decisions of other states. *M. E. Church* v. *Council of Hoboken*, 4 *Vroom* 13; *State, Central R. R. Co.,* v. *City of Elizabeth*, 6 *Vroom* 359; *S. C., Court of Errors and Appeals, March Term,* 1874; *Pope* v. *Town of Union*, 3 *C. E. Green* 282; *Livingston* v. *Mayor of New York*, 8 *Wend.* 85; *Mayor of Jersey City* v. *Morris C. and B. Co.*, 1 *Beas.* 547; *Angell on Highways*, § 149; *Washburn on Easements*, § 133; *Dillon on Mun. Corp.*, § 503, (*1st ed.*)

This is, however, but introductory to the further question whether the case differs if the lands of a person are surveyed

and mapped by public authority instead of by himself, to secure uniformity and the permanent interests of a town or city. The mere act of surveying and mapping by public authority, cannot take from any one the rights he has in his land. It is his, and the public cannot take it for use without compensation. But if the public are at the expense of surveying and mapping, and the land owner adopts the plot as his and makes conveyances with reference to it, the fact that the public have incurred the expense and trouble to which he might otherwise have been subjected, does not alter the principle. The plan becomes his when he deliberately adopts it, whether he made it or some agent of the public did it. If this be so, then the adoption of a map or plan made by commissioners appointed by the legislature, or under legislative authority, by conveying and bounding with reference thereto, is a dedication of the lands of the owner, within the lines of the street laid down on said map and referred to in the conveyance. *In the matter of Thirty-second street,* 19 *Wend.* 127; *Matter of Twenty-ninth street, N. Y.,* 1 *Hill.* 189–191; *In the matter of Lewis St.,* 2 *Wend.* 472; *Wyman* v. *Mayor of New York,* 11 *Wend.* 486.

There is such reference to and boundary upon Bayway in this deed of the appellant, Clark, to the Central Railroad Company, as brings it within the rule. If he should be now allowed an assessment of damages, the Central Railroad Company, from whom he has received compensation for the lands he has conveyed, which he deemed adequate, in the increased value of his property by the location of a depot there, would be called upon to pay a part of the assessment of damages for laying a street upon which their land is bounded by the description in his deed.

The answer to the first question reserved is, therefore, that the appellant has dedicated to the public use, his lands lying within the boundaries of the street called Bayway on the commissioners' map, and is not entitled to compensation upon the laying out and opening this street across such lands.

In the cases above cited of opening streets in New York city, there is a nominal assessment of damages made where

lands have been dedicated. This is allowed because in addition to the perpetual right of way across the lands, the city also takes the fee in the streets, when they are regularly opened by public authority, hence a nominal allowance is made for the value of the fee. But in our state the public take only an easement in lands for public highways, and the fee still remains in the owner. The commissioners were, therefore, right in making no assessment, not even nominal damages for these lands that had been already dedicated.

In answer to the second point reserved, the deed is the best and only evidence of the dedication, since the appellant never opened and used the road for himself, nor have the abutters thereon, used it with his knowledge or consent. There are no acts of dedication outside of his deed. His act of dedication depends upon the deed alone, and its construction is the question to be decided. It is both competent and conclusive evidence in the case.

This also decides the next point reserved, for if the dedication be by deed, then the intent must be settled by the interpretation of the words used in the deed. Parol evidence is not competent to contradict, alter or vary its terms. Where the law says that if the land owner bounds his lands by conveyance upon a street which is mapped and filed as a proposed public highway, a dedication is presumed, it is not competent for him to deny it and say, I had no such intention, but only mentioned the street as a convenient measurement or boundary for my lands.

The grantee in the deed, and the public have the right to look to his deed alone for his intention, and to find its construction by the well settled law of the state. His reserved purpose outside the deed, cannot deprive others of their rights under it.

It is true that dedication is a matter of intention, and where it is attempted to be shown by acts or admissions, otherwise than by deed, there parol proof may be used to show that there was no dedication intended; but where the alleged dedication is by deed, that must speak, as the highest and

best evidence and parol proof cannot be admitted to show any other intention than that expressed therein.

Upon the points reserved and the facts stated to this court, the verdict must be set aside.