# THE PEOPLE *v.* ANTOINE BEAUBIEN.

Indictment for obstructing a highway. As appeared in support of the indictment, the alleged highway was situated upon a tract formerly known as the Antoine Beaubein farm, which was annexed to the city of Detroit, in 1832; in 1836, the defendant, being proprietor, caused the same to be surveyed into lots, blocks, and streets, and a plat thereof to be recorded, on which the alleged highway was laid out, and designated, "Street leading to burying ground;" but the plat was not acknowledged;—*Held*, no dedication under R. L. 1833, p. 531, which provides that "town plats executed, acknowledged and recorded, in the manner therein prescribed, shall be deemed a sufficient conveyance to vest the fee of such parcels as are thereon expressed, named, or intended to be for public uses, in the county in which such town lies; in trust," &c.

As further appeared, after the plat was recorded, the defendant conveyed to different grantees, and at sundry times, by deeds duly executed and acknowledged, several lots designated thereon; the deeds describing the lots according to the plat, and referring to it as of record: *Held*, that these conveyances did not supply the defect in the plat, or operate as an acknowledgement of it.

But, *held* further, that, independent of the statute, there might be a valid dedication at common law, by acts *in pais*, without deed; and that the making and recording of the plat, and the execution of the conveyances of lots as designated upon it, were acts *in pais*, of the defendant, tending to establish such dedication.

Acts *in pais*, however, to constitute a valid dedication, must clearly evince an interest to dedicate.

And all such acts of the proprietor, tending to show his intention, are admissible in evidence, where it is attempted to establish a public right, against that of the proprietor.

*Held*, accordingly, that it was competent for the defendant to rebut the presumption of dedication arising from his acts proved in support of the indictment, by evidence of facts tending to show that no dedication was intended; as that the *locus in quo* was originally a private lane, leading along the westerly side of the Antoine Beaubien farm; that in 1827, the defendant's ancestor, then being the proprietor, conveyed a portion of the farm to the city of Detroit, for a burial ground; and, in the same indenture, granted a right of way over this lane, for the purpose of ingress and egress to and from such burial ground,—the city covenanting, in the same instrument, to erect and maintain a gate, at the entrance of the lane from a public street; that this gate was afterwards erected and for a long

time maintained; that on a plat of a portion of this farm, made by the defendant, and placed upon record in 1832, this lane was designated, " Lane to burying ground;" that about 1835, or 1836, it ceased to be used as a way to the burial ground, on account of the opening of public streets leading thereto, which were more convenient; that, in 1836, the defendant resumed exclusive possession of the lane, on the claim that the right of way over it, granted to the city, had been forfeited; that in 1837, the city released the right of way to the defendant; that from that time to the finding of the indictment, the defendant had continued occasionally to lease, sell, or convey portions of the lane; and he, and those claiming under him, had occupied and built upon the same, as his and their private property; that it never had been a thoroughfare ; nor had it ever been open, used, or improved as a public highway.

And, the question being presented by a special verdict finding the above facts, *it was held* further, that there had been no dedication of the alleged way to the public.

*Sed quere*, as to whether, as between the defendant and his grantees, each of his conveyances to them of lots as designated on the plat, and referring to it, was not an implied grant of a right of way over the " Street leading to burying ground," as laid out on the plat, or an implied covenant that it should remain open as a public highway.

Land dedicated to public uses as a highway, by the proprietor, does not in fact become a highway, so that an indictment will lie for its obstruction, until accepted or used as such.

Indictment against the proprietor for obstructing it, is not, of itself, a sufficient acceptance.

CASE reserved from Wayne District Court.    This was an indictment for obstructing a highway, which was described as commonly called " Lane to Burying Ground," or " Street leading to Burying Ground," leading from Jefferson Avenue in the city of Detroit, and thence passing by a certain place in said city, usually called the "Old Burying Ground," to the Fort Gratiot road, in said city.

The cause was tried before the Hon. B. F. H. Witherell, Presiding Judge at the September term, 1845, of the District Court.

The jury returned a special verdict, finding the following facts, viz:—From the evidence adduced upon the part of the prosecution, they found,—" That Antoine

Beaubien, Senior, father of the defendant, was, on the 1st of June, 1827, and long prior thereto had been seized of the "Antoine Beaubien Farm," so called, then lying near to, but beyond the limits of the city of Detroit, and over which the alleged highway runs; that he continued seized thereof until March 24, 1836, when he died intestate, leaving the defendant surviving him, and his sole heir at law. That by an act of the legislative council of the late territory of Michigan, approved May 28, 1832, all that part of said farm lying between Detroit River and the Fort Gratiot Road was annexed to, and made a part of, and has ever since continued to be a part of, the city of Detroit. That January 26, 1836, there was recorded in the registry of deeds for said city, by the city register, but without any certificate or acknowledgement thereof being thereon or thereto of record, a map or plat of so much of said farm as was thus made a part of the city, purporting to lay out and subdivide the same into blocks, lots, streets, lanes, &c. in the manner appearing on a copy of said plat annexed to the special verdict and made a part thereof, and that this is the only map ever recorded of that part of said farm lying north of Larned street.* That the open space on this map designated, 'Street leading to Burying Ground,' is the alleged high-

* As no copy of this map can be here given, it may render the case more intelligible to state that, as appears by the map, the "Antoine Beaubien Farm" is a strip of land about 500 feet in width, extending from the bank of the Detroit river, in a northwardly direction to, and across, the Fort Gratiot road, about 220 rods distant from the river. At a point about 70 rods distant from the river, it is crossed by Jefferson Avenue, the principal street of Detroit, and about 200 feet further from the river, by Larned street. By the plat, these and the various other streets of the city running parallel to the river, are laid out across it, as are also other streets running from the river to the Fort Gratiot road. On the rear of this portion of the farm, and adjoining the Fort Gratiot road, is the "Old Burying Ground;" and on the plat there appears an open space thirty feet wide, leading from Jefferson Avenue by the westerly side of the "Burying Ground," to the Fort Gratiot road, and designated thereon, "Street leading to Burying Ground." The map is designated on its face, "Plat of the farm of Antoine Beaubien, extending from Detroit river to the Fort Gratiot road, as surveyed into town lots by John Mullett, surveyor, in 1831, 1833 and 1835."

way described in, and intended by the indictment.   That at sundry times subsequent to the record of this map, the defendant had conveyed to various persons by deed, divers lots, parts and parcels of said farm, and had described such lots in the conveyances, by their appropriate numbers and blocks, and as being thus numbered and described 'according to the survey thereof by John Mullett, surveyor, the map or plat whereof is duly recorded.' " [Several such deeds made to different individuals during the years 1836 and 1837, were annexed to and made a part of the verdict.]   " That the open space above mentioned appears also on 'Farmers Map of Detroit,' and is thereupon designated 'Lane to Burying Ground;' and that, subsequent to the year 1837, the defendant had also conveyed to various persons by deed, several other lots on said farm, and described them in the conveyances as numbered on, and according to 'Farmer's Map of said city of Detroit.'   That the various other streets laid down on the plat recorded in 1836, had, ever since the record thereof, been open, continued and used, as public streets of said city, without any obstruction or objection by the defendant; but that the alleged highway described in the indictment, had ever since that time been by him built upon, enclosed, deeded away, leased away, and obstructed."

From the evidence adduced by the defendant, the jury found: " That, on the 1st of June, 1827, Antoine Beaubien, Senior, by a certain indenture duly executed, acknowledged, and recorded, conveyed to the Mayor, Recorder, Aldermen and Freemen of the city of Detroit, that parcel of said farm adjoining the Fort Gratiot Road, now known, and on the said recorded plat designated, as 'Burying Ground;' 'to be occupied as a burial ground and place of interment for the dead;' and also, 'the right of way for free ingress and egress, to and from said pre-

mises,' over a lane particularly described, being the same
designated on the said recorded plat, as 'Street leading
to Burying Ground,' and alleged in the indictment to be
a public highway; that in and by the same indenture,
the said Mayor, Recorder, &c., covenanted that they and
their successors should and would, ' at all times and for-
ever thereafter, at their own expense, well and sufficient-
ly build and set up, a fence around the premises convey-
ed; and also, ' a bridge over the ditch crossing said lane:'
and also, 'that they would construct a good and sufficient
board gate in the fence of said Beaubien on Jefferson
Avenue, at the entrance to the lane above mentioned, and
the said fence, bridge and drain, would keep in good con-
dition and repair forever.'   That soon after the execution
of this instrument, said Antoine Beaubien, Senior, became
lunatic, and in the year 1831, was duly found and de-
clared so to be by the judge of probate of Wayne coun-
ty; and in the same year the defendant was duly appoin-
ted guardian for him, and continued to be his guardian
until the time of his decease; that while such guardian,
the defendant, for the purpose of showing the relative
position of said farm, and for the convenience of selling
and leasing lots thereon, found it necessary to have, and
caused to be made, a survey and plat of that part of the
farm lying between Larned street and Detroit river;
which plat was duly recorded." [A copy of this plat was
annexed to and formed a part of the special verdict; and
on it so much of the alleged highway as lies between
Jefferson Avenue and Larned streets, was laid out and
designated, "Lane to Burying Ground."]  "That the sole
object and purpose of devoting the open space designated
on the last mentioned plat as 'Lane to Burying Ground,'
was, to indicate the easement on and across said farm
granted to the corporation of Detroit, and to show the
relative situation of lots on Jefferson Avenue, and on Lar-

ned street, on said farm.   That, at the time of the execu-
tion of the conveyance to the corporation of Detroit, and
for years afterwards, said farm was an enclosed field, and
the only access to said 'Burying Ground' was over and
through said 'lane,' which was entered from Jefferson
Avenue, through a gate; that the Fort Gratiot Road was
not then, nor for years afterwards, laid out or construc-
ted; that this lane was thirty feet wide, and ran on and
across the westerly side of said farm, and along the
easterly side of the 'Lambert Beaubien Farm,' so called,
and on each side of it there was a fence running contin-
uously from Jefferson Avenue to the Burying Ground;
that the gate at the entrance thereof was kept habitually
closed and locked, from the time of the conveyance to the
corporation of Detroit, down to the time when by long
use it became frail, out of repair, and broken down; and
the key thereof was kept by the defendant, and delivered
by him from time to time on application for the same, to
persons desiring to pass through the lane on funeral occa-
sions.   That the corporation of Detroit did not observe
their covenants contained in the indenture between said
corporation and said Antoine Beaubien, Senior, nor the
conditions thereof, on them binding; but failed during the
years 1835 and 1836, to keep the gate, fence and bridge,
specified in said indenture, in good and lawful condition
and repair; and allowed the same to get wholly out of re-
pair, decayed and dilapidated.   That about the same
time, Beaubien and St. Antoine streets, in said city,
were laid out, opened and used, and became, either of
them, more suitable and convenient for the purpose of re-
pairing to and from the 'Burying Ground;' and thereupon
became and were used for that purpose, and said 'lane'
wholly ceased to be used therefor : that said 'lane' never
was used for any other purpose than that above mention-
ed, and never was worked or improved as a highway,

nor were any highway taxes ever collected on account of it, or disbursed upon it. That thus ceasing to be used, and the corporation of Detroit so neglecting to keep the conditions in the conveyance to them, the defendant, on account thereof, in the year 1836, entered upon the resumed said 'lane,' or easement; and in the year 1837, on suggestion of his counsel that it might be advisable, as a matter of prudence, he applied for and obtained from the corporation of Detroit, a quit claim deed to him of said 'lane,' excepting such portion thereof as ran along the westerly side of the 'Burying Ground,' and such other portions as were crossed by the streets of the city, extended across it, and the said farm, as designated on the plat recorded in 1836; and the defendant, at the same time, conveyed to the said corporation all those portions of said 'lane,' not so quit claimed to him. That, upon the execution of the last mentioned conveyances, the defendant commenced, and afterwards continued to sell and lease different portions of said 'lane,' and erected valuable improvements upon other portions of it; acting in regard to it as he did in respect to other portions of said farm openly and publicly, and with the knowledge of his lessees, grantees and others, without any molestation, let, or hindrance, until the finding of this indictment. That ever since the execution of said quit claim deed by the corporation of Detroit, said 'lane' has been assessed and taxed as the private property of the defendant and his grantees and lessees, for city, county and state taxes, and such taxes have been duly collected. That since some time prior to the year 1837, said 'Burying Ground' has been but little used as a place of interment for the dead in consequence of having become nearly occupied, but that said corporation purchased another lot in a different part of the city, which has been mostly used as a place of interment

since that time.    That the fact that the defendant occupied, built upon, sold, and leased said ' lane,' and claimed the same as his property, has been notorious ever since 1836.    That in conveying lots on said farm, the defendant left undisposed of a strip of land six feet wide, along the easterly side of said ' lane,' and that, since he has resumed said lane, he has, in disposing of portions thereof, disposed of said six feet in width lying along such portions.    That the defendant is an illiterate person, ignorant of the English language; knows but little of business, and is wholly incapable of understanding the legal intendment of his acts, without explanation from counsel and others, and has been obliged to depend upon others to draw all his conveyances."

The verdict concludes that, "if upon the facts thus found, and the law applicable thereto, the court are of opinion that the defendant is guilty, the jury find him guilty, otherwise they find "not guilty."

It will be observed that the verdict distinguishes the facts established on the part of the prosecution, from those proved in defence of the indictment.    In the course of the trial, the evidence in defence was objected to by the prosecution, as inadmissible, on the ground that as an absolute and irrevocable dedication by plat duly recorded, and subsequent conveyances of the defendant recognizing it, had been shown, such evidence was not admissible to contradict the dedication.    The court admitted the evidence subject to the objection.

The verdict having been rendered, the defendant moved for judgment thereon; whereupon, the Presiding Judge reserved the questions arising upon this motion, including the question of the admissibility of the defendant's testimony, and certified the case to this court for its opinion thereon.

*A. W. Buel,* Prosecuting Attorney, and *Geo. C. Bates,* for the People.

The facts which the jury find established on the part of the prosecution, show an absolute, express, immediate, and irrevocable dedication of the ground in question to the public, as a street or public highway ; and such dedication by plat, record thereof, and subsequent deeds recognizing the same, cannot be contradicted by parol.   It amounts to a covenant, that there are such streets as are designated on the plat, and to an *estoppel,* preventing the person making it from denying the existence of such streets.   R. L. 1833, p, 531 ; *Parker* v. *Smith,* 17 Mass. R. 415 ; *Trustees of Watertown* v. *Cowen,* 4 Paige's Ch. R. 515 ; *Cooper* v. *Alden,* Harr. Ch. R. 72 ; *Sinclair* v. *Comstock,* Id. 404, '12 ; *Beatty* v. *Kurtz,* 2 Peters, 566 ; *City of Cincinnati* v. *White's Lessee,* 6 Id. 431 ; *Matter of 17th St., New York,* 1 Wend. 262 ; *Matter of Lewis St., New York,* 2 Id. 472 ; *Livingston* v. *Mayor, &c., of New York,* 8 Id. 89, 99 ; *Wyman* v. *Same,* 11 Id. 489 ; 19 Id. 130 ; 17 Id. 651 ; *Matter of 39th St., New York,* 1 Hill's R. 193.

It may be said that the dedication in this case was qualified and contingent, and, as such, liable to be revoked.   But the recorded plat does not show upon its face any contingency whatever.   *Underwood* v. *Stuyvesant,* 19 John. R. 180, is not applicable, for there, by express statutory provision, no dedication could be made, unless subject to ratification or rejection, by the corporation of New York city.   This was a legal contingency, which the world was bound to notice ; but in the present case, there was no such contingency.   That contended for amounts to a reservation of the power in the proprietor, to revoke his dedication, at will.   Neither is *Barraclough* v. *Johnson,* 35 Eng. C. L. R. 337, in point, for there the question was whether there had been a dedication by prescription.

It may be contended also, that the plat never having been acknowledged according to the statute, (R. L. 1827, p. 279,) was illegally recorded, and therefore not binding. But the statute does not alter or abolish the common law relating to dedication; it merely superadds that a plat duly acknowledged shall operate, not merely as a dedication of the *use*, but as an *absolute grant of the fee*. Besides, every acknowledgment of a deed wherein the proprietor conveys lots according to a plat, as duly recorded, must operate in law as a fresh acknowledgment of the plat by the proprietor. And a proprietor conveying lots " according to a plat duly recorded," is estopped from denying the regularity and legality of the record.

*Van Dyke & Emmons* and *A. D. Fraser* contra.

1. The making and recording of the plat, and the subsequent conveyances of the defendant, referring to the same as duly recorded, did not *per se* constitute the space thereon designated "Street leading to Burying Ground," a *highway*. Though by such acts an owner may vest in his individual grantees a right of way, easement, or other equitable right in lands designated as streets, squares, or avenues, such right is distinct from the claims of the public, and is not a right, the infringement of which will be punished by indictment. No individual can, by his own act merely, create a highway. He may signify his consent to dedicate his land to such an easement, but the land does not become a highway until acts of *user* by the public. If the public neglect to use and work it, and refuse to recognize it as such, and lay out, work and use other roads which render it entirely useless, then it is not a highway. In support of these positions the following authorities were cited, and commented upon at length: *Rex* v. *Hudson*, Strange, 894, 909; *Lade* v. *Shepherd*, Id. 1004; *Rugby Charity* v. *Merriweather*, 11 East, 375; *Rex*

v. *Lloyd*, 1 Camp. 260 ; *Woodyer* v. *Hadden*, 1 Eng. C. L. R. 156 ; *Wood* v. *Veal*, 7 Id. 158 ; *Trustees British Museum* v. *Finnis*, 24 Id. 406 ; *Barryclough* v. *Johnson*, 35 Id. 337 ; *Jarvis* v. *Dean*, 13 Id. 45 ; *Rex* v. *St. Benedict Parish*, 6 Id. 483 ; Woolw. on ways, 287 : also the following American cases, on the subject of dedication : *Willoughby* v. *Jenks*, 20 Wend. 97, 98 ; *Livingston* v. *Mayor of New York*, 8 Id. 85, 89, 90, 94, 97 to 99, 104 ; *Seventeenth St., N. Y.*, 1 Id. 270 ; *Lewis St. N. Y.*, 2 Id. 472 ; *Wyman* v. *Mayor, &c., of N. Y.*, 11 Id. 486, 493 '7 ; *Farmer St. N. Y.*, 17 Id. 661 ; *Thirty-second St. N. Y.*, 19 Id. 128 ; *Pearsall* v. *Post*, 20 Id. 117 ; *Trustees Watertown* v. *Cowen*, 4 Paige Ch. R. 510 ; *Cincinnati* v. *White's Lessees*, 6 Peters 431 ; *Hinkley* v. *Hastings*, 2 Pick. R. 172 ; *Hobbs* v. *Lowell*, 19 Id. 405 ; *Emerson* v. *Willey*, 7 Id. 68 ; *Rowell* v. *Montville*, 4 Greenl. R. 270 ; *O'Linda* v. *Lathrop*, 21 Pick. R. 296 ; *Parker* v. *Smith*, 17 Mass. R. 413 ; *Brown* v. *Manning*, 6 O. Cond. R. 129 ; *Leclerc* v. *Trustees, &c.*, 7 Id. 354 ; *Bailey* v. *Copeland*, Wright's R. 150. The English authorities cited all tend to show that there must be *user* by the public. It would even seem from *Woodyer* v. *Hadden*, and *Wood* v. *Veal*, that in order to constitute a highway, there must be a *thoroughfare*, subject to use by the whole public. Most of the American authorities cited above, are cases where it has been decided that a grantor may be considered as dedicating lands to which he refers in his deed. Many of them use the words " *dedication to the public.*" But an attention to the facts of each case, and to the principles upon which the cases are respectively decided, will show that they use the phrase in a narrow and untechnical sense. The very cases in which it occurs decide that the *public* have no rights, until an intention to take is manifested. Some of them, as the Massachusetts and the earlier New York cases, say that as between the grantor and the grantee, there is an *implied covenant* for a right of

way. This we grant. It is the true doctrine : and where the courts of New York, in later cases, took the broader groun d of dedication, they merely held that it was a dedication so far as to *estop* the grantor from claiming damages, when the road was laid out by the public. They abandoned the old language of implied covenant, as such covenants were abolished by statute in that state. Other cases, as *Cincinnati* v. *White's Lessees*, in 6 Peters, and *Trustees of Watertown* v. *Cowen*, 4 Paige, also *O'Linda* v. *Lathrop*, 21 Pick., go, as do some of the earlier English cases, upon the ground of an *estoppel in pais*, which prevents the grantor from depriving his grantee of the anticipated benefit. We may, for the present, concede this also. It does not follow that, because the grantor's acts *estop* him from resuming the alleged highway as against his grantee, or are construed to be an *implied covenant* in favor of the grantee, they vest in the public, without any *user*, a fixed and determinate right, the infringement of which will be protected against by indictment.

2. The evidence in defence was properly admitted. The words "Street leading to Burying Ground," are susceptible of different interpretations. We may therefore show antecedent and contemporaneous circumstances to control or modify their meaning. *Parker* v. *Smith*, 17 Mass. R. 413 ; see also 1 Greenl. Ev. 325 § 287 note 3 ; Id. 333 note, 316 '18 '19 '21, '24, '26, '7 '40 ; 1 Cow. & Hill's notes to Ph. Ev. 1359 '60 '68 '73 '99, 1400 '1 '3 '5, and the numerous cases there cited. And this we might do, even if the meaning were free from ambiguity.

The deeds in this case were introduced not as evidence of any agreement or contract between the parties to the cause, but simply of an admission ; and as such they may be explained, contradicted or varied, like any other written or verbal admission ; 1 Greenl. Ev. 315, 373.

3. As to *estoppels in pais*, they operate only in fa-

vor of parties who have acted on them. Though a stranger may give in evidence matters which parties or privies might have plead by way of *estoppel*, such evidence is for the consideration of the jury ; 1 Greenl. Ev. 26, 323, 236 ; 2 Stark. Ev. 575, '6 ; Cow. & Hill's notes to Ph. Ev. 1436, 1437, and cases there cited. And if the reason of the principle of implied dedication be that of an *estoppel in pais*, that reason is inapplicable here, because there has been no *user* by the public.

4. The evidence in defence being admitted, there remains no question as to *intention*. It is certain that there was no dedication. 1. The origin of the way is shown to have been a *limited right*, which, as the cases show, in *law* estops the inference of dedication. The jury have no right to find against it. 2. The gate or barrier is admitted to be a legal and designated mode of rebutting the presumption of dedication. When the fact of such a barrier appears, there is no question for the jury. 3. If the question of dedication or not, is open, every fact is in favor of the defendant—the width of the lane—its termination—that it is not now necessary as a way to the burying ground, though necessary when granted—that the city was to keep it in repair, and keep gates—that it was never used by the public—that the city never worked it —but taxed it as *private property*, which actually disproves acceptance, and *estops* the public from claiming it as a highway.

5. If the facts be considered as showing a grant of a limited and conditional right of way, then we say there has been no dedication to the public, and no right has been infringed which will be protected by *public indictment ;* *Roberts* v. *Carr.*, 1 Camp. 260, note ; *Rex* v. *Northampton*, 1 M. & S. 262 ; 2 Chitt. Cr. Law 566 ; *Woodyer* v. *Hadden*, 1 Eng. C. L. R. 156 ; *Stafford* v. *Coney*, 13 Id. 39 ;

*Barraclough* v. *Johnson*, 35 Id. 337 ; Hawk. Pl. Cr. 76, § 1 ; see also numerous other cases cited ante.

GOODWIN, J., delivered the opinion of the court.

The questions reserved for the opinion of this court, in the case presented, are,

1. Was the testimony offered by the defendant and received subject to the objection made to it, admissible?

2. Under the law applicable to the special finding, is the defendant guilty, or not guilty, of the offence charged in the indictment?

On the part of the prosecution it is insisted, that the alleged highway was dedicated to the public use as a public street or highway, by the record of the plat of 1836, on which it was laid out and designated as "Street leading to Burying Ground," and by the subsequent execution, by the defendant, of conveyances to different persons of lots as designated on this plat, and referring to it as duly recorded; and, that the evidence offered by the defendant, was inadmissible to control or destroy the legal operation and effect of these acts.

The "Act to provide for the recording of town plats, and for other purposes," approved April 12, 1827, (R. L. 1827 p. 278,) was in force when the plat of 1836 was recorded. The first section of this statute provided, that whenever a town should thereafter be laid out, the proprietor should, before selling any lots, cause a true map or plat thereof to be recorded in the registry of the county where the same lay, and imposed a penalty for selling lots before this should have been done. The second section provided that such maps or plats should particularly set forth and describe all the public ground within such town, by its boundaries, courses, and extent; and whether it be intended for streets, alleys, commons, or other public uses; and all the lots intended for sale, by progressive

numbers, and their precise length and width; and that these maps made and acknowledged before a justice of the peace, or a justice of the county court of the county, or a judge of the supreme court, and certified under the hand and seal of the judge or justice taking such acknowledgment, should be deemed a sufficient conveyance to vest the fee of such parcels of land as were therein expressed, named, and intended to be for public use, in the county in which such town should lie, to and for the uses and purposes therein named, expressed and intended, and for no other use or purpose whatever.

This statute, as is apparent on its face, was designed to provide an explicit mode for the dedication of streets and other grounds designed for public uses, upon the laying out of towns by individual proprietors, and to render the rights of purchasers, and the public generally, in grounds thus dedicated, definite and certain. It also obviated the difficulty met with in some of the cases in the application of common law principles of dedication, in regard to the ownership of the fee, by providing that, upon compliance with the provisions of the act, this should vest in the county, in trust for the designed uses.

The mode in which the dedication was to be made, and the title to pass, was specifically pointed out. No formal grant was required, and no grantee was designated. A map or plat was required, with the public grounds, streets, &c., particularly set forth and described upon it. This was required to be acknowledged before one of the officers named in the act, and to be accompanied with a certificate of the acknowledgment, under the hand and seal of the officer. The map, with the acknowledgment, was also required to be recorded. The mode of conveyance required by this statute was peculiar, and different from any other known to the law; and upon obvious and familiar principles, to be operative to pass the title, a con-

veyance under the statute must have fully complied with its several requirements.

In this case the ground laid out and mapped was an addition to the city of Detroit, not included in its limits at the time of the passage of the act. The map appears to have been recorded in January, 1836. It does not appear to have been acknowledged as required by the act, and is accompanied with no certificate of acknowledgment. The subsequent references to it, in deeds to individual purchasers of lots, and the acknowledgment of those deeds to the grantees named in them, cannot supply the defect, or operate as an acknowledgment of the map with the certificate signed and sealed, required by the statute.

Those deeds, with their references, may be very proper evidences as acts *in pais* to establish a dedication upon general rules of law, independent of the statute. And, though the jury do not find that the plat was placed upon record by the defendant, or by his express authority, yet the deeds show the act, by whomsoever done, to have been by him ratified and confirmed.

The next question which arises is, whether, aside from the provision of the statute, the place in question became, by the acts of the defendant, a public street or highway, under the general rules of law; for, though it may not have become so by force of the statute, yet it may have been thus dedicated to the public for that purpose. And the recording of the plat, and the reference to it as duly recorded under the provisions of the statute, are facts entitled to great weight, in determining this point. It is contended by the prosecution that these acts—the causing the survey, the making and recording the map, the selling of lots according to it, as is done in the deeds mentioned in the verdict—operated as a dedication of the land to the public as a street, and that the evidence offered and received was incompetent to show that no dedication was

designed. On the other hand, not only is the opposite of these propositions contended, but it is insisted, that even if these acts amounted to a dedication, there must have been an acceptance on the part of the public, or its constituted authorities, before any right in the public could attach. To determine the questions presented, an examination becomes necessary, of some of the cases upon the doctrine of dedication, of late much considered, and the principles by which it is governed.

*Rex* v. *Hudson*, 2 Strange 909, was a prosecution by information for stopping a common footway. It was proved that the *locus in quo* had been a common passage as far back as the witnesses could remember. The defendant produced a lease of it for the term of fifty-six years, for the purpose of being used as a passage way during the term, which had then recently expired. It was held that the defendant was not guilty, and that the time during which it had been left open after the expiration of the lease, was not long enough to amount to a gift to the public.

*Lade* v. *Shepherd*, 2 Strange 1004, was an action of trespass. The place of the supposed trespass was the property of the plaintiff, who had several years before built a street upon it, which had been ever since used as a highway. It was held that there had been a dedication to the public for a right of passage, but not a transfer of the property in the soil.

In *Rex* v. *Lloyd*, 1 Camp. 260, which was an indictment for obstructing a highway, the place in question was a narrow and circuitous street or passage in the city of London, which had been open and used by the public as far back as could be remembered. It had been long lighted by the city ; there had been no chain across it, nor any mark to denote that it was private property. The houses upon it had been owned by one individual. He sold a part at one end of the passage, and the purchaser closed

the passage, separating his own from the residue of the buildings upon it, by a wall. It was held that there was a dedication; Lord *Ellenborough* remarking, that if the owner of the soil throws open a passage, and neither marks by any visible distinction that he means to preserve his rights over it, nor excludes persons from passing through it by positive prohibition, he shall be presumed to have dedicated it to the public ; and further, that the public are not to be excluded from it after being allowed to use it so long without any interruption.

The same doctrine was held in *Rex* v. *Barr*, 4 Camp. 16, a similar case, where the way had been used for fifty years, and there had been a succession of tenants, and express notice to the steward. Although the act of the tenant would not affect the right of the landlord, yet there having been successive changes of tenants, with notice of the user, and this not inhibited or prevented, the dedication was held to have been made.

In the case of the *Trustees of the Rugby Charity* v. *Merryweather*, 11 East 375, note *a*, tried before Lord *Kenyon*, there had been a street open for fifty years, terminating against a house at the end ; the plaintiff accounted for not having put up a bar or the like, to denote that the way had not been relinquished to the public at large, by the fact that the *locus in quo* had been under lease for a long term ; but it appeared that the lease had expired ten years before, and the street had remained open for eight years after its expiration, the parties having been in treaty for the right of way. It was held that there had been a dedication. This case has been, however, in effect overruled by subsequent decisions,—the circumstances being considered as sufficiently rebutting the presumption of a dedication.

In the case of *Woodyer* v. *Hadden*, 5 Taunton 126, (1 E. C. L. R. 34,) the question of what acts amounted to a

dedication was elaborately considered. The action was trespass upon the plaintiffs' close called John Street, being in the city of London. The plaintiffs had erected a street across their own land, terminating against the defendant's close on the west, which was separated from the end of the street by the defendant's fence for twenty-one years, during nineteen of which houses were completed, and the street publicly watched, cleansed and lighted, and both the footways, and half the horseway thereof, paved at the private expense of the inhabitants. Another street was also made by the plaintiffs, intersecting this at right angles, and communicating with another public street on the north. The houses had been built on the street from time to time at different times ; and the actual use of the street had been mainly, if not entirely, for these houses. It was held that there had not been such a *dedication* to the public, as that the defendant might pull down his wall and use the street as a highway, continuing it on to his own land. And Lord *Mansfield*, who concurred in the opinion of the court, made a distinction between the use, for the purposes of the inhabitants of the houses erected by the plaintiffs, and the use by others, and by the defendant, in extending the town over his own land. *Gibbs* deemed the time of user insufficient to presume a dedication, and alludes to the fact that the pavement was unfinished. *Heath*, J., remarked that there were two questions in the case ; first, whether there had been a dedication ; and second, whether the place was made a common highway ; and held that there was not evidence of a dedication, and that the facts showed no intention to give more than a right of passage to the houses; and asks, how could a street like this, which is no thoroughfare, be deemed a public highway ? *Chambre*, J., dissented, and was of the opinion that the acts showed a dedication, remarking that no particular time was necessary ; that if the act

of dedication be unequivocal, it might take place immediately. This is a leading case on this subject. There was no map appearing in the case, but the street was laid out on the ground, and buildings were erected thereon, and leased. The street did not communicate with a highway at both terminations, but was a *cul de sac.* All the facts and circumstances were gone into to determine whether there had been a dedication or not, and whether a highway or not.

*Wood* v. *Veal,* 5 B. & Ald. 454, (7 E. C. L. R. 158,) was an action of trespass, and a justification was set up under a public right of way. A street had been used for many years by the public, and paved, lighted, and watched, under an act of parliament, in which it was enumerated as one of the streets of Westminster; but the plaintiff proved a lease for ninety-nine years including the place in dispute, which had recently expired, and he soon after erected a fence across the street, for the pulling down of which the action was brought. Held no dedication, and no highway; for that the act of the tenant did not bind the landlord, the owner of the property, and it was by his assent only that the dedication could be made.

In the case of the *King* v. *the Parish of St. Benedict,* 4 B. & Ald. 447, (6 E. C. L. R. 482,) where a road was set out by commissioners under a local act, and certain persons only were by the act to use it, but in fact it had been used by the public for many years, it was held that this was not sufficient evidence of a dedication to the public; and that, if it was, there being no evidence that the parish had acquiesced in the dedication, it was not a public road which the parish were bound to repair. And in reference to the repairs, *Bailey,* J., said that where there is a dedication of a road by the owner of the soil, the parish is bound to repair, and he thought there should be evidence of the acquiescence of the parish in that dedication.

The *Trustees of the British Museum* v. *Finnis & others*, 5 Carr. & Payne 460, (24 E. C. L. R. 406,) was trespass for taking up stones which paved a portion of ground on the outside of the wall of the British Museum. The place was claimed to be a highway. It appeared that it had been used as such for thirty years, but that originally it was enclosed with a fence which decayed and fell, and the public then went upon it. Held not a dedication, and the rule applied that where the ground is opened to the public and used, and no act done excluding the inference of dedication, there a right will be acquired ; and that if the party does not mean to dedicate as a way, but only to give a license, he should do some act to show a license only. In the case, the original enclosure, with some of the other circumstances as to the pavement, rebutted the presumption of a dedication.

Without going further into the English cases on this subject, which are somewhat numerous, it may be remarked that, to constitute a valid dedication, there must exist the intention to dedicate, clearly evinced by the acts of the owner of the land ; that there must be, as was said in a late case, (*Poole* v. *Huskisson*, 11 Excheq. R. 830,) an *animus dedicandi ;* or, as Chief Justice *Denman* said in *Barraclough* v. *Johnson*, 8 Ad. & E. 99, (35 E. C. L. R. 337,) "a dedication must be made with the intention to dedicate ;" that while there may be a dedication by acts *in pais*, without deed, all such acts connected with, or relating to the premises, tending to show the design and object of the dedication which is alleged, may be gone into for the purpose of determining whether there has been a dedication or not.

This subject has also come under consideration in the courts of the United States, and of several of the states of the Union.

The leading case in the supreme court of the United

States is the *City of Cincinnati* v. *White's Lessees*, 6 Peters 431.    The question was in relation to the dedication of a common in the city of Cincinnati.    The original equitable owners had laid out the city, with its streets and the common in question, and the public had used and enjoyed them accordingly for a series of years.    Afterwards, a person who had become vested with the legal title, brought ejectment for the common.    It was held that the right of the public to use the common rested on the same principles as the right to use the streets; and that there had been a dedication to the public use, when the town was laid out, which gave an indefeasible title to the city of Cincinnati.    The court considered that the setting apart of the common for public use, the enjoyment of it as such, and the acquisition of private and individual rights with reference to it, were in the nature of an *estoppel in pais*, which precluded the original owner from revoking the dedication.

Like doctrines were held in *Barclay* v. *Howell's Lessee*, Id. 498, which was ejectment for land in Pittsburgh, between Water Street and the Monongahela River.    In both these cases, plans or maps were made, at the time of laying out these respective cities, and the question in each was, as to the right to the *possession*, in opposition to the alledged dedication.    And it was held that the dedication being established, precluded the plaintiffs from recovering in ejectment.    In the former, it was held that rights of this description did not rest upon length of possession, but the dedication might be presumed, if the street was used with the assent of the owner of the soil.    *Jarvis* v. *Dean*, 3 Bing. 447, was relied upon.    It was added that such use should be for such a length of time that the public accomodation and private rights might be materially affected by interruption of the enjoyment.    In the latter case it was held that the immediate use was not necessa-

ry to the right, if the dedication were unequivocal; but, if that were doubtful, the circumstance that there never had been any use ought to weigh against the dedication.

Several cases have been referred to, decided by the courts of New York, where the doctrine has been much discussed. The cases principally relied upon by the counsel for the prosecution, arose in relation to the assessment of damages for opening streets in the city of New York. It appears that under an early statute of the state, commissioners were authorized to mark out and designate the sites of streets within the corporate limits, over ground not yet laid out into lots and streets, and thus prospectively fix the plan of the city as it should be extended by the progress of population and improvement; and that the owners of the property were prohibited from opening other streets than those designated by the commissioners on their plan or map. The statute also provided that where the streets were opened by the city authorities, the fee of the soil over which they passed should be vested in the city, and damages for the appropriation to the public use assessed against the proprietors of the adjacent lots benefitted by the improvement. In the cases referred to, the supreme court held, as did the court of errors, in reviewing their decisions, that where the individual owners had laid out the ground into lots, bounding them on the streets thus designated, and made maps or plans of their own designating the lots, and sold lots by the plan, or by the commissioners' map, a right was acquired by the purchasers, to have the streets thus designated and referred to, open to public use; and that the owner, as against the purchasers, retained only the fee of the soil, subject to the easement; and, where the street was opened and established as a public street by the city authorities, and the title of the same vested in the city, the owner was entitled to only nominal damages. This view is expressly

taken by the Chancellor, in his opinion given in the court of errors, in the case of *Livingston* v. *Mayor of New York*, 8 Wend. 85.    In *Wyman* v. *Mayor of New York*, 11 Wend. 490, the Chief Justice reviews the previous cases of this description which had arisen in that state, and re-affirms the same doctrine.    He decides that, not only the purchasers of lots bounding on the particular street, but all the purchasers of lots from the grantor, within the tract laid out by him and embraced in his plan or map, are entitled to the benefit of the easement, and to have all the streets thus designated kept open for the benefit of the property purchased ; and that a release by the owners immediately bounding on the street, would not extinguish the rights of the others.    He remarks that each purchaser of a lot gave an enhanced price, in consequence of having, not only a street adjacent to his own lot, but of having a number of streets in the vicinity, according to the map or plan by which he purchased.    He afterwards asserts the very general proposition, that if the proprietor sells a single lot he adopts the map, and thereby makes an appropriation or dedication to the public use, of the ground laid out as streets ; which is, however, subsequently qualified by the further remark that the recognition of the plan laying out his ground, is a dedication of the streets to be taken for public use whenever the corporation shall think proper to open them; leaving unaffected the distinction before taken, between rights acquired by the public, and those of the grantee as against the grantor.    The judgment of the supreme court in this case was affirmed by the court of errors, the Chancellor there reaffirming the views which he had taken in the previous case of *Livingston* v. *Mayor of New York*.

In each of these cases, Senator *Sherman*, in delivering his opinion in the court of errors, alluded to the distinction between dedication evidenced by user alone, for a

considerable period of time, and that evidenced by other acts showing an immediate dedication. And in the case of *Livingston*, he considered a dedication to have been shown in both ways—the streets having been actually open nineteen years. The case of *Wyman*, he regarded as a case of immediate dedication, and referred to the fact, among others, that the street (Fifth Street in N. Y.,) had been open for public use before it was taken by the commissioners, though it did not appear to have been used as a thoroughfare for any definite time.

The case of *Thirty-second Street*, 19 Wend. 128, was a similar question of assessment of damages where lots had been sold, bounded on streets, and a part of the streets conveyed, with covenants that they should always be and remain open as public highways, and the streets had not been actually opened. In the previous cases, reliance had been placed on the doctrine of implied covenant, and rights thereby created, and the Revised Statutes had intervened and abolished implied covenants. Justice *Bronson*, in delivering the opinion of the court, refers to the two above mentioned cases of *Livingston* and *Wyman*, as proceeding, not only on the ground of implied covenant, but also upon the ground of an implied grant of a right of way, or dedication of the land to public use,—not distinguishing between the two,—and arrives at the same result respecting the damages, which had been before established. He also alludes to the case of *Furman Street*, 17 Wend. 649, in which the opinion was likewise delivered by himself. That was a case of assessment of damages for opening a street in the city of Brooklyn. The statutes relating to streets in this city, were somewhat similar to those relating to the city of New York. In 1806, however, and before these statutes were passed, an individual had laid out a considerable tract of land into blocks, lots and streets, and sold lots according to the plan: the

streets were subsequently adopted by the city, and, upon opening them, the proprietor was held entitled only to nominal damages, as in the New York city cases. The principle of dedication was alluded to, and the remarks of Justice *Bronson* upon this subject, as applied to the acts of selling by a plat with streets designated, are certainly very strong, and seem to lose sight of the distinction between an implied grant to the grantees, and dedication to the public at large. As to the question of damages under the statutes referred to, if the right to have the street open existed, whether it were by dedication or implied grant was immaterial.

If, at the time of the recognition of the plan by the sale of lots with reference to it, the streets designated were thrown open to general use, then there would be an actual dedication. In the language of Lord *Denman* above quoted, a dedication would be made with the intention to dedicate. But where they are not so, but continue enclosed, in the possession of the original proprietor, it may well be questioned who have acquired rights, or have cause of complaint, beyond the grantees. If in such case the proprietor should alter his design and re-purchase the lots which he had previously sold, or should obtain from the grantees a relinquishment of all right to the contemplated streets, and to have them open, could the public at large complain? Would any of their rights be infringed? In *Willoughby* v. *Jenks*, 20 Wend. 96, where the question arose in a different form, the action being trespass, the distinction is recognized by Justice *Cowen*, though the case went off upon a question as to the jurisdiction of a justice of the peace.

The supreme court of Massachusetts, in *Hinckley* v. *Hastings*, 2 Pick. 162, deemed the principle of dedication of a street or highway as inapplicable in that state, and maintained trespass, although there had been a *user* of the

*locus in quo* for six years, as a public street in Boston,—
the alledged survey and laying out of the street by the
proper authorities under the statute being void for uncer-
tainty.    The subject was, however, further considered in
*Hobbs* v. *Inhabitants of Lowell,* 19 Pick. 105, and it was
there held that a highway might, in that commonwealth,
be established by dedication on the part of the owner of
the soil; but a suggestion is made as to whether an assent
is not necessary, and if so, what should constitute such as-
sent; and facts are referred to in the case, showing full
assent by the public authorities.

The previous case of *Parker* v. *Smith,* 17 Mass. 413,
relied upon by the prosecution, was an action on the case
for obstructing a way, and turned upon the construction
and effect of a deed conveying a piece of land in New
Bedford, bounding it southerly and westerly on a way or
street.    It was held to be an implied covenant that there
were such streets, and that the grantor and his heirs were
estopped from denying that there were streets or ways to
the extent of the land on those two sides.    The doctrine
was also laid down, however, that when, at the time of
the grant, there is a way in fact existing, which corres-
ponds with the one mentioned in the deed, and this does
not extend through the whole line of the land granted, the
parties shall be supposed to have had reference to such
actual existing way as a boundary, as far as it extends,
and not to have contemplated one co-extensive with the
land.    This was a private action for an injury to a private
right.

The same doctrine of implied covenant and *estoppel* be-
tween the parties to a deed, is recognized in the case of
*Van O'Linda* v. *Lathrop,* 21 Pick. R. 296.

This examination of some of the numerous authorities
referred to, without extending it farther, is sufficient to
show the principles applicable to this class of cases.

That there may be an immediate dedication of property to public uses, especially as streets or highways, by acts operating as such, and unequivocally evincing an intent to dedicate, there can be no doubt. At the same time, when it is attempted to establish a public, against an individual right, by acts *in pais,* all of those acts bearing upon the question are proper to be considered. And further; there is a distinction between individual rights under individual grants from which such a dedication is sought to be established, and those of the public at large —the grant of the right to the individual grantee being one thing, and the dedication to the public, which may be inferred or presumed to have been intended from the grant, another.

In the case before us, the evidence to establish the highway consisted of the survey of the ground into lots and streets; the recording of the map; the conveyances by the defendant to several individuals of lots upon it, and referring to the map and survey. These conveyances were not to any public authorities, or in trust for any public use; they were to the individual grantees. The question is not as to their right under those conveyances;—that question is not now before us;—but as to the existence of the alledged highway. Whatever may be the effect of those conveyances as between the parties to them, in regard to the alledged public right, they are but acts *in pais* tending to establish it. Was then the testimony offered by the defendant and received subject to objection, admissible? In other words, was it competent for the defendant to show in defence of the action, the facts which the special verdict finds to have been proved by this testimony? The doctrine is urged, and is well settled, that even as between parties to a contract, the facts and circumstances relative to the actual condition of the subject matter may be proved, to show what was the mean-

ing and effect of the terms used, and much more when deeds are used as acts recognizing rights in the public, and for the purpose of establishing those rights. It was, then, competent for the defendant to show the situation of the alledged way at the period of the making of the map and deeds; that the place in question was never open to the public; that it was enclosed, and in possession of the defendant; and, with the view to account for the particular designation on the maps, of "Lane to the Burying Ground," and "Street to Burying Ground," to show a restricted right of way existing by special grant, for specific purposes; and for this purpose the grant itself, showing its origin and extent.

It appears from the verdict that the alleged way was never open to the public generally; that while the other streets designated on the plat were so, from the time of its being recorded, this has been from that period in the possession of the defendant, and by him, and those claiming under him, leased, occupied, and in part built upon; that from 1827 down to the recording of the plat, there had been, under the special grant to the municipality of Detroit, a *limited* right of way (no highway or thoroughfare) to the burying ground, the possession remaining with the defendant, or his ancestor; and that about the time of the recording of the map, the defendant resumed the exclusive occupation of the way upon a supposed forfeiture of the conditions of the grant. (I say supposed, for it seems to me the counsel and the jury have mistaken the effect of the instrument by which this grant to the city was made. There is no condition contained in it. The provisions for keeping up the fence, gate, &c., are covenants, for breach of which the proper remedy would be by action. They cannot be construed into a condition. If so it would be a condition of the whole grant, and then, by forfeiture, the burying ground itself would revert. The

right of way, then, continued until in fact released by the grantees in 1837. This, however, does not alter the fact found by the jury that the defendant resumed, under an alledged right, the exclusive possession.) There were other broader streets sufficient for the uses of the blocks and lots laid out, of which the dedication was unequivocal; and, on the plat, there were six feet between the lane in question and the nearest adjacent lots; circumstances to be considered, in conjunction with the resumption of the exclusive possession.

Upon these facts, then, was there a dedication; in the language of Justice *Bronson*, (6 Hill, 411,) "the act of giving or devoting" this strip of ground to the public for a highway? Was there "a dedication made, with the intention to dedicate"? We think not; whatever may be the effect of the deeds as between the parties. If, as between them, they may be construed as a grant of a right of way, or a covenant that the lane leading to the burying ground, as designated on the map, should be a public street, yet, in respect to the public at large, no dedication took place.

But even if the facts amounted to a dedication, did the *locus in quo* become a highway? It was never in fact opened or used as such. The common council of Detroit, with whom, under the laws incorporating the city, is the charge of its streets with the power of laying out and opening new ones, have never accepted or adopted this as a street; but on the contrary, released their special right of way over a part of it, which they held by grant. They have treated it, not as a highway, but the reverse. A highway is a public passage for all. If never accepted or adopted by the competent authorities as such, and never opened or used as such, how can it be said that there is a highway? Admit that there was, on the part of the defendant, an intention to dedicate ever so unequivocally

evinced, but no acceptance or adoption, and no way opened or used, could it be called a highway? The indictment, in cases like the present, is for a nuisance for obstructing the passage to the public inconvenience. But where no passage has in fact existed, how are the public incommoded? There may be the right to have the easement, but until the easement in fact exists; until the public have been put into the possession and enjoyment of it, it seems to me there can be no criminal prosecution.

It was urged by the counsel for the prosecution that the acts of the defefendant, themselves constituted a dedication; and that this prosecution in behalf of the people was an acceptance of the dedication. But is this an appropriate mode of acceptance ;—after dedication alledged to have been made some nine years ago, and no acceptance or adoption of the gift, indicated by *user* or otherwise, and the proprietor and his grantees have covered the premises with buildings and improvements, to come forward and present him criminally by a grand jury, as guilty of a misdemeanor, and then, when he presents these facts on the trial, to say, why sir, we only mean by this a public acceptance of the gift you made us some nine years since? The counsel did not refer us to any authorities for this mode of acceptance ; but we think that neither the *civil*, or common law, or common reason, or common justice can give it countenance or support.

Upon this point, that whatever the intention as indicated by the acts of the defendant, yet there was no public street over the ground in question by any acceptance or adoption by the public authorities, or by *user*, it never having been in fact opened, we might have disposed of this case ; but the proposition that, by the acts of the defendant, it was dedicated and constituted a highway, having been urged and argued by counsel very elaborately, and with great research and ability, and the language

used in some of the cases much pressed, we deemed it due to the counsel, as well as to the importance of the case to consider the doctrine urged, and the principles applicable to it.

The opinion of the court, to be certified to the district court for the county of Wayne, is, that, upon the finding of the jury, the defendant is not guilty, and judgment should be rendered in his favor.

*Certified accordingly.**

---

\* Since this case was decided, the 2d vol. of Greenl. on Ev. has been published, in which the author, with his usual conciseness and accuracy, states some of the principles considered in this case, as follows: "The existence of a public way is proved, either by a copy of the record, or by other documentary evidence of the original laying out by the proper authorities, pursuant to statutes ; or by evidence either of immemorial usage, or, of *dedication* of the road to public use.   In the latter case, *two* things are essential to be proved; the *act of dedication*, and the *acceptance* of it on the part of the public."   "If accepted and used by the public in the manner intended, it works as an estoppel *in pais*, precluding the owner, and all claiming in his right, from asserting any ownership inconsistent with such use.   The right of the public does not rest upon any grant by deed, nor upon a twenty years' possession ; but *upon the use of the land with the assent of the owner*, for such a length of time, that the public accommodation and private rights might be materially affected by an interruption of the enjoyment."   "It" (the question of dedication or not) "is a question of intention, and therefore may be proved or disproved by the acts of the owner and the circumstances under which the use has been permitted."   "The evidence of dedication of a way may be *rebutted* by proof of any acts on the part of the owner of the soil, showing that he only intended to give license to pass over his land, and not to dedicate a right of way to the public."   §§ 662, 664. *Rep,*