## MATTER OF FOURTH AVENUE.

*Supreme Court, First District; General Term,* 1854.

COMMISSIONERS OF ESTIMATE AND ASSESSMENT.—EXECUTION OF POWER BY MAJORITY OF THOSE TO WHOM IT IS CONFIDED.—CONSTRUCTION OF DEED.—DEDICATION.—TAXATION OF COSTS IN SPECIAL PROCEEDINGS.—APPEAL-PAPERS.

A deed referring to a street, without describing its width, must be taken to intend the width of the street as laid out at the time of the execution of the deed, though it had not then been opened to the full width.

Of the effect of a release of a right to land used as a street, upon the dedication thereof.

The provision of the Constitution (*Const. of* 1846, art. 1, § 7),—declaring that compensation for private property taken for public use "shall be ascertained by a jury of not less than three commissioners,"—means that compensation is to be ascertained by the meeting, investigation, and conference of all the commissioners, and by the report of a majority, in case all cannot agree; and hence a report signed by two of the three commissioners, the other dissenting, is sufficient.

The provision of the judiciary act of 1847 (*Laws of* 1847, 645, § 38),—which declares that no county clerk shall tax costs on any case, except where the amount, exclusive of actual disbursements, is limited by law,—applies to special proceedings,—*e. g.*, proceedings in street cases,—but a judgment in such case is not necessarily erroneous because the clerk taxed the costs, though he should not have done so. The relief of the aggrieved party is by motion, and he cannot raise the objection on appeal from the judgment.

Where an appeal from a judgment confirming the proceedings in a street case, is brought by a part of the owners as to whom an award is made, every thing essential to show jurisdiction and regularity must appear in the appeal-papers; but that part of the commissioners' report which applies exclusively to other parties, and does not throw light on the appellant's case, may be stated in the most general terms.

Appeal from an order at special term, confirming the report of commissioners of estimate and assessment, in the matter of the application of the Mayor, &c., of the city of New York, to open Fourth avenue.

The facts are fully stated in the opinion.

By the Court.—Mitchell, J.—On the 17th of January, 1852, a judgment was entered in the Court of Common Pleas for the city and county of New York, in a suit wherein Sampson McGown was plaintiff, and Levenworth, Danforth, Waterson, and Latson, defendants, that the plaintiff convey by deeds, to be dated 25th of November, 1848, to the defendants, respectively, or their assigns, the lands described in the judgment. The judgment is divided into sections: section 7 describes the whole of the lands in three subdivisions; the first describes the lands in it as bounded east by the Third avenue, west by the Fourth avenue, south by Ninety-ninth-street, and north by One-hundred-and-third-street, excepting a certain parcel.

Section 8 directs a conveyance to Bayard Clark, assignee of Latson, of two blocks, bounded east by the Third avenue, west by the Fourth avenue, south by Ninety-ninth-street, and north

by One-hundred-and-first-street, excepting the parcel above excepted ;—to T. W. Gale, of other pieces of land, one of which is bounded east by the Fourth avenue; another is bounded east by a line parallel to the Fourth avenue, and distant 175 feet therefrom, and west by the middle of the Old Post Road; another, bounded east by the Fourth avenue, and another running along the west side of the Fourth avenue.

Section 9 directs a conveyance to Danforth, or his assigns, of a block of lands bounded west by the Fourth avenue, and east by the Third avenue; and of thirty-two lots, bounded west by the Fourth avenue, east by a line parallel to the Fourth avenue, and distant 395 feet east therefrom; of a third piece, bounded east by the Fourth avenue, &c.; of a fourth piece, running along the west line of the Fourth avenue; and of a fifth piece, bounded east by the Fourth avenue.

Section 10 directs a conveyance to Waterson of lots bounded east by the Fourth avenue, and of the other lots bounded east by a line parallel to the Fourth avenue, and distant west therefrom 243 feet 3 inches.

Then follow these words in this section 10 : "The Fourth avenue, herein referred to, being taken at the width of 100 feet, as originally laid out."

Immediately after that follows section 11, directing the costs to be paid by the respective defendants, and other matters. The judgment has, in all, 16 sections; but none except the 7th, 8th, 9th, and 10th, describe the lands.

McGown and wife, by deed acknowledged 28th February, 1852, but in pursuance of the judgment being dated the 25th of November, 1848, yet in no part of it referring to the judgment, conveyed to Bayard Clark in fee for the consideration of $9,369.50, certain lands, with full covenants of warranty, and against incumbrances. The judgment was, that the land should be conveyed by such warranty deed, except as to the incumbrance of two mortgages executed by McGown to the commissioners, for loaning certain moneys. The deed contained no such exception.

The description of the lands in question is in the deed, substantially as follows: Two blocks of land, bounded east by the Third avenue, west by the Fourth avenue, south by Ninety-ninth-street, and north by One-hundred-and-first-street (except-

ing the piece of land on the corner of Ninety-ninth-street and Third avenue, being 260 feet on Ninety-ninth-street, and extending along the avenue to the centre line of the block), together with all the right, title, and interest of the parties of the first part, of, in, and to Ninety-ninth, One-hundredth, and One-hundred-and-first streets, and the Third and Fourth avenues, adjoining said premises, or any part thereof, to the extent of one-half of such streets and avenues so adjoining the same.

Bayard Clark, in October, 1852, conveyed most of the lands in the block between the Third and Fourth avenues and One-hundredth and One-hundred-and-first streets, to Sluyter, describing the parcel as beginning at the southeast corner of the Fourth avenue and One-hundred-and-first-street, and running along the sides of the streets and avenues, but showing by the dimensions of the parcel that 920 feet were represented as being between the Third and Fourth avenues.

Sluyter conveyed to Houghton, by the same description as the last, the same lands, on the 1st of November, 1852.

In the general plan of the city as adopted by the commissioners under the act of 1807, Fourth avenue was laid out as only 100 feet wide, and the distance between the Third and Fourth avenues was 920 feet. By the act of 27th April, 1837, section 3, it was declared that all that part of the Fourth avenue, between Thirty-fourth-street and the Harlem River, should be widened, on the map or plan of the city, by adding thereto, on each side thereof, twenty feet of land, so as to make the whole width of that part of the avenue 140 feet; and this was to be with the like effect as if the avenue had been so laid out by the commissioners under the act of 1807.

The commissioners of estimate and assessment have given to Mr. Houghton only a nominal compensation for the part of the avenue taken from him, twenty feet (or eighty) by two hundred, while they have allowed about $1,200 to the owner of the corresponding portion in the block next north, who probably had done no act to dedicate his lands.

The correctness of their decisions turns on the true construction of the deed to Clark. That deed makes no reference to the judgment—and it does not strictly conform to the judgment. The judgment directs the conveyance to be subject to two

mortgages; the deed makes no allusion to them. The judgment is to convey lands bounded east by the Third avenue, west by the Fourth avenue, south by Ninety-ninth-street, and north by One-hundred-and-first-street. This would be a dedication of the half of the Third avenue and Fourth avenue, and of Ninety-ninth-street and One-hundred-and-first-street, to the public, and would not require McGown to convey to Clark any of his right in those avenues and streets, and would give Clark a right to an absolute conveyance of the whole site of One-hundredth-street between the Third and Fourth avenues. But the·deed conveys to Clark the lands bounded by those streets, and gives to Clark the right, title, and interest of McGown in the two avenues and three streets. The deed gave only the right of the grantor to Ninety-ninth-street, when the judgment required a full conveyance of it with warranty, and gave the right of the grantor in One-hundredth and One-hundred-and-first streets, and in the two avenues, which the judgment did not require to be given.

It is evident, therefore, that the parties did not mean to follow the judgment, both by their departure from it in these several instances, and their omission to refer to it.

It would be an imprudent rule to allow a judgment to control a deed between the absolute owner of land and the purchaser from him, when no reference was made in the deed to the judgment. The deed, being subsequent to the judgment, may have been made to differ from it purposely, because the parties voluntarily assented to the change, or concluded.that the deed, as changed, would best carry out their contract. In this respect the case is entirely unlike a deed executed by an officer of the court, who has no power to act, except as the judgment directs. As between buyer and seller, the judgment is like a contract—the deed merges the contract. This judgment, too, was entered by consent, and thus is still more like a contract.

It is doubtful, also, whether the words in the ninth section of the judgment, describing the Fourth avenue intended, were meant to apply to the Fourth avenue, except where it occurred in that section of the judgment. If they were meant to extend through the whole judgment, still the deed should control, for the reasons before stated.

Then, what did the grantor and grantee mean to convey in

this deed? It is not pretended that they meant to convey and to warrant the title to the full half of the two avenues and of the three streets, opposite the two blocks of land. The doctrine had become perfectly familiar that a conveyance of lands in that part of the city, bounding them on an avenue or street, was a dedication of the half of the street or avenue to the public, so as to entitle the grantor or grantee to only nominal damages on the actual opening of the street.

With this knowledge they executed a deed, in which the lands are thus bounded, and cautiously avoided bounding the lands by the middle of any of the streets or avenues, or by even the old line of the Fourth avenue. If McGown had an imperfect title, or no title to the whole site of the streets or of the avenues, he did not mean to subject himself to an action for breach of his covenant, of seizin or title, and so, if he had no title to this twenty feet, he meant to be equally protected; and, as this intention is derived from the face of the deed, it was equally entertained by grantor and grantee. They both intended to make a distinction as to the title which Clark should receive to the two kinds of property; as to that within the block, it was to be an unincumbered title, and that part was to be bounded on the streets and avenues, and was to be subject to all the incidents, and have all the benefits of lands so bounded. One of these incidents, beneficial to the grantee, although not to the grantor, was, that half of the streets and avenues in front of that property was dedicated to the public. The benefit to the grantee being that, when the street should be opened, the grantor would be entitled to only nominal damages for the lands to be taken. This left still in the grantor a small right in the site of the street, viz., the right to the fee of the street subject to this dedication; and, accordingly, after the conveyance by specific bounds, the deed proceeds and grants all the right of the grantor in the streets and avenues to the grantee. That right was not meant to be, and was not an absolute ownership, but only the right which remained in the grantor after the dedication. The only point in which the title to the site of the street differed from the title to the block, so far as it appears, was in this dedication, and, unless the dedication has effect, there would be no reason for the discrimination made in the deed.

This was not the only property that McGown conveyed at the same time on the Fourth avenue and other streets, as the judgment shows; and it may well be that Clark and his grantees gain more by the dedication resulting from all the deeds, than they would lose by having only a nominal sum allowed to them in this case, and being exempt from paying their share for other lands taken, but thus dedicated by others.

The inference is, that the release of the right to the streets was not intended to affect the deed so far as to prevent a dedication to the public, which the law implies from the other words used in the deed.

This is substantially conceded in the argument, so far as regards all the streets and all the avenue, except the twenty feet added to it; but, it is contended that the Fourth avenue intended in this deed, was the Fourth avenue as it was before that addition. There is nothing on the face of the deed to show such intention; and the law which implies the dedication, implies from the fact of bounding lands on a street or avenue not opened, but directed by law to be opened or laid out for that purpose, that the grantor adopts the street or avenue as thus to be opened, and dedicates all within it to the public. The inference, therefore, always is, that the street or avenue as directed to be opened, when the deed was executed, was the one intended and referred to in the deed. There was in 1848 and 1852, at the periods of the date and execution of the deed, but one Fourth avenue; that was not yet opened, and was to be, when opened, 140 and not 100 feet wide.

If the judgment meant the old avenue, that meaning was not carried out in the deed; and the parties, probably intentionally, abandoned it, each finding it most to their interest to give or take what the deed described.

The counsel for Mr. Adriance objects that the report is not valid, because it is signed by two only of the commissioners, and insists that the Constitution of 1846–7 requires a concurrence of the three commissioners: he also objects that the judgment is bad, because the taxation of costs was by the clerk of the court.

Section 7, of article 1, of the Constitution, is, that when private property is taken for the public use, the compensation to be made therefor "shall be ascertained by a jury of not less

than three commissioners, appointed by a court of record, as shall be prescribed by law." The court then is to appoint the three commissioners, or more, and then the compensation is to be ascertained by the commissioners. The section does not say that the commissioners are all to agree; if it had said that the compensation was to be ascertained by a tribunal, or court, or board, consisting of three commissioners appointed by a court of record, the meaning of the section would not have been altered, for the commissioners are a tribunal, or board, for a specific purpose, and then it would have been plain that a majority could decide. It had long before been held, and it was declared anew in our Revised Statutes (2 *Rev. Stat.*, 555, § 27), that when any power or duty is confided by law to three or more persons, it may be performed by a majority of such persons, upon a meeting of all, unless special provision is otherwise made. This was a familiar principle of law, known to those who framed the present Constitution, and long before adopted, as it was found necessary and beneficial in practice, and it had never been complained of. It cannot be supposed that the framers of the Constitution intended to repeal it in this case, by a covert means: if they had intended to apply a new rule in this case, they would have sought to express their intention clearly and openly. It was said that the Constitution meant that generally more than three should be appointed, so as to make it certain that three should agree. The framers of the Constitution knew that to require so large a number to act would cause an unjustifiable burden in many cases,—as when a small strip is taken in the country for a private way,—and they would not have thus subjected their constituents to an unnecessary burden, without any good object, and without showing more clearly that such was their intent.

If five, or seven, or any larger number was appointed, it would not remove, but increase, the difficulty. The concurrence of all that are appointed is necessary, or of a majority only. For when the Constitution says that the compensation is to be ascertained " by not less than three commissioners, appointed by a court of record," it says in effect, that it is to be ascertained by the commissioners, to be appointed by the court, whatever that number may be, and requires that three at least shall be appointed—it is as if it had said " by three or any larger

number of commissioners to be appointed by the court"—it is not by not less than three of the commissioners to be appointed by the court, which would be necessary to allow a majority only to decide, if the present clause has not that effect.

In fact, the damages are ascertained by the three, when the three meet together as a *quasi judicial tribunal*, and hear all the proofs and arguments of the parties in interest, and then decide according to the judgment of a majority : the dissenting member of the commission has acted with the majority, although he did not fully agree with them, and has probably led them in part to the conclusion to which they came.

The abstract of estimates of damages and benefits shows the dissent of one member, and his reasons for his dissent, and so shows that he did, in fact, act with the others, and attend their meetings. If he had not so attended, it should have been shown by the objectors.

The judiciary act of 1847, 645, § 38, provides that "no county clerk shall tax costs in any case, except where the amount thereof, exclusive of actual disbursements which the party, for whom they shall be taxed, shall be entitled to recover, shall be limited by law," &c. This is exceedingly broad in its language ; it applies not merely to actions, but to "any case," thus including special proceedings as well as formal actions. Its object was equally extensive ; it was to prevent clerks from exercising any power in the taxation of costs in any case, except in the cases where there was no chance of mistake as to the amount at which they were to be taxed, and except as to disbursements. Those were the cases in which the costs, exclusive of disbursements, were a mere trifle—certainly under $50. This showed a legislative opinion that it was not proper to trust the clerk of a county with the taxation of costs, where the amounts would be large, and some judicial ascertainment might be necessary to determine what and how much they should be.

It was argued that it was to be inferred from the general tenor of this act, that it was not intended to apply to any thing but formal actions. This is not so. Section 3 applies to writs of error on suits or proceedings ; section 13 regulates writs of *ne exeat* in suits and proceedings in the Supreme Court ; section 14 applies to "proceedings in partition ;" section 20 allows all papers, &c., in cases of special proceedings theretofore filed

with the clerk of the Supreme Court, to be filed with the clerk of the county, &c.; section 22 speaks of "suits and proceedings in equity;" section 28 gives "power to order the sale of the real estate of a religious incorporation on its application;" section 31 directs the mode of proceeding when the judge of a county court is interested, &c., in a cause or matter pending before him.

The costs, therefore, should not have been taxed by the clerk. But does that make the judgment necessarily erroneous? If costs are improperly taxed, and that should appear on the face of the judgment, or on too short notice, or in any other irregular manner, the judgment would be good, and the relief of the party would be to move for a retaxation, which would be granted at the cost of the irregular party. When so effective a remedy is allowed to a party, he should not be permitted to raise the objection on appeal; or against the validity of the judgment. His only remedy should be by motion, and, if the decision there be erroneous, he should appeal from the decision made on the motion.

Some discussion took place as to what papers should be brought before the general term on appeal, in these proceedings.

Every thing that is peculiar to the case of the appellant, or which will aid in the decision of the questions raised by him, should be presented as fully as it was presented at the special term, together with every matter essential to show that the proceedings were regular, and that jurisdiction was obtained to give judgment. It is not necessary to include any part of the commissioners' report that applies exclusively to other parties, and which does not throw light on the appellant's case; that part may be stated in the most general terms—as, that various other sums were awarded to other parties for damages, and various sums assessed to other parties for benefit; and that the commissioners, among other things, awarded to the appellant $     , and to A. B., whose land taken was similarly situated with the appellant's, except that it was not considered by the commissioners as dedicated, $   .

This would be no innovation—for it was among the most familiar rules in pleading, to state in general terms the character of a process to bring a party into court, or to bring in a

jury, and not set them forth verbatim,—as A. B. was summoned to answer C. D. in a plea of debt, or A. B. complains of C. D. in custody, &c., and in general terms it was stated that the jury were summoned and came, and were chosen, tried, and sworn,—without setting forth the summons, the trial, or oath. But still, if any question of the legality of the summons to the party or jury, or as to the choice, trial, or swearing of the jury, was properly raised, the facts would then be so stated on the record as to present that question for review. So, also, when issues of fact and of law were joined, the issues of law were alone inserted in the demurrer-book.

In this case, so much of the report as is above designated, and the other papers now submitted to the court, or so much of these last as either party may show to be material, should be inserted among the appeal-papers, and form part of the judgment to be entered, if either party wishes to carry the case further.

The report should be affirmed, with costs.

EDWARDS, J.—The claim which is set up by Houghton is not analogous to that which was made by the objectors in the cases of Livingston a. The Mayor, &c. (8 *Wend.*, 85), and Wyman a. The Mayor, &c. (11 *Ib.*, 486). In the first of these cases the objector was the grantor; and in the last, he claimed through the grantor of the lots, which were bounded on the street which was alleged to have been dedicated. In the present case the objector is himself the grantee of the lots bounded on the Fourth avenue, and the question is not whether he has dedicated the lots, but whether twenty feet of the avenue, as laid out by the act of 1837, was conveyed to him. It seems, that the description of the property, mentioned in the deed of conveyance to Houghton, was taken from the deeds which had been executed after the avenue had been laid out as a street one hundred feet wide, by the act of 1807, and before the passage of the act of 1837, which laid it out as a street one hundred and forty feet wide. In the deed executed by McGown to Clark in the year 1848, the old description was used; but it was stated that the Fourth avenue referred to was " to be taken at the width of one hundred feet, as originally laid out." In the subsequent conveyance to Sluyter, and in the convey-

ance by him to Houghton, there is no such definition of the meaning of "Fourth avenue." The lots are bounded on the Fourth avenue without restriction or qualification; and it seems to me that the description used can admit of no other construction than that the avenue meant, was the avenue as then laid out. The only Fourth avenue then existing, to which the description could apply, was an avenue of one hundred and forty feet width. There was at the time no Fourth avenue of one hundred feet width.

The next objection made to the report of the commissioners is, that it was signed by two of them, the other commissioner having dissented, and refused to sign it. This objection is founded in that provision of the Constitution which declares, that "when private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the State, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." (*Const.*, art. 1, § 7.)

, It is an old rule of the common law, that in matters of public concern, and when the authority conferred is public, all of those to whom it is committed must meet and confer together; but that the voice of the majority shall govern, unless there is some special provision to the contrary. (21 *Wend.*, 182; 6 *Johns.*, 39, 41; 1 *Bos. & Pull.*, 237; 3 *T. R.*, 592.) And this rule is substantially embodied in one of the provisions of the Revised Statutes. (2 *Rev. Stat.*, 555.) It was with a knowledge of this existing law that the Constitution was adopted; and when it declared that compensation should be ascertained by not less than three commissioners, and introduced no special provision showing an intention to alter the law, it meant that compensation should be ascertained by the three commissioners in the manner in which similar acts had hitherto been performed; that is, by the meeting, investigation, and conference of all the commissioners, and by the report of a majority, in case all could not agree.

In reference to the claim of Mr. Burlock, I do not think that there has been such a deviation from the rules which have heretofore been adopted and acted upon, as would authorize me to send the report back to the commissioners.

The report must be confirmed.

CLERKE, J.—(Concurring as to validity of report by only two commissioners; dissenting as to other matters.)—It is admitted in the case, by both counsel, that Margaret C. McGown, in 1835, conveyed to Sandford and others the block now owned chiefly by Houghton, bounding it on the west by "the Fourth Avenue," but describing it as containing 920 feet in depth. By mesne conveyances, containing the same descriptions, and designating the boundary on the west by the same terms, the land was vested in S. B. McGown. On the 17th of January, 1848, a judgment was recovered against S. B. McGown, for a specific performance of a contract to convey this block; the judgment required that the conveyance should be of the block bounded on the west by the "Fourth avenue," adding, in explanation of the term "Fourth avenue," that "it should be taken at the width of 100 feet, as originally laid out." The blocks in question were directed to be conveyed to Bayard Clark, an assignee of the plaintiff in the judgment. A deed bearing date the 25th November, 1848, as directed by the judgment, was executed by McGown to Clark, conveying the block, "together with all the right, title, and interest of the parties of the first part, to the adjoining streets and avenues," and following the description in the judgment, although not adding in express terms, that the "Fourth avenue should be taken at the width of 100 feet, as originally laid out." The judgment, indeed, is not referred to at all in the deed in direct terms; and one of its requirements is omitted, showing that there was some subsequent consent of the parties to modify it; but nothing whatever appears, either in the deed or otherwise, that it was their intention to vary the judgment in the dimensions or description of the premises, or in the degree, extent, or quantity of the interest directed to be conveyed. There is nothing to imply an intention by the grantor or grantee to alter the signification of the term "Fourth avenue," except the omission in the deed of the explanatory words, which I have quoted from the judgment.

It is admitted, in this case, that Clark conveyed to Sluyter portions of the block, bounding it upon "the Fourth avenue," and that, on examining the dimensions of the lots, it appeared that the block was conveyed by Clark to Sluyter as of the dimensions of 920 feet in depth.

The question, therefore, to be determined, is, whether Clark,

on receiving the conveyance from McGown, pursuant to the judgment, accepted the land curtailed of twenty feet on its western line, bounding it by the "Fourth avenue" as widened, and not by the Fourth avenue, "taken at the width of 100 feet, as originally laid out;" for, if Clark did not consent to this, it cannot be pretended that any subsequent owner did.

What is the evidence that he consented, gratuitously, to relinquish so large a portion of his land for the public use? It is granted that there is no express and positive language or act indicating any such intention; but that there is enough in the vague manner in which the "Fourth avenue" is referred to (a term confessedly bearing two significations), to show a constructive dedication. I confess, I cannot see any thing in the proceedings of either of the parties, or in what is expressed or omitted in the conveyance, to warrant any such supposition—a supposition which would deprive a man of a large proportion of his land without compensation. We must bear in mind, that if the dedication was made at all, it was made by Clark; for, if I understand the judgment correctly, McGown was obliged to convey the land to the Fourth avenue, "taken at the width of 100 feet as originally laid out." These words, to be sure, follow section 10 of the judgment, which is divided into ten sections, each section relating to a separate portion of land, and directing to whom it is to be conveyed; section 8, relating to the block in question, directing the conveyance to Clark. Section 10 being the last, the explanatory words relating to the meaning of the term "Fourth avenue" were naturally and properly placed after that section, to save the necessity of repeating them after each of the ten sections; and there is no reason to suppose, from the circumstances, that these words should be more applicable to the tenth than to any other section in the judgment. But the explanatory reference is in itself conclusive; for, it says, that "the Fourth avenue, as herein used, should be taken," &c.—"herein" clearly signifying "in this judgment," not merely "this section," and that the object was to avoid tautology.

It is, therefore, to some act of Clark that we must look for this intention. No option was reserved to his grantor. By the judgment, I repeat, Clark was entitled to the 920 feet. It matters not what McGown intended without the concurrence

of Clark; he was bound to convey to Clark the blocks containing those dimensions in depth. What reason is there for implying that the latter surrendered the right to twenty feet of those dimensions along the whole western boundary of this land, in the absence of the least tittle of proof of any adequate motive, or of any inducement or compensation, unless we are to assume in him a degree of civic worth, and public spirit, so rare, that it will be prudent not to presume the possession of it by any citizen in these degenerate days? To suppose that he gratuitously gave up this large strip of his land for the widening of one of the thoroughfares of the city would be implying more than we are authorized, at all events, from the circumstances of the present case, to presume.

The mere omission, in the deed from McGown to Clark, of the number of feet in the depth of the blocks, does not warrant any such supposition; especially when we consider that in eight months after the execution and delivery of this deed he expressly shows that he contemplated no such thing. In the conveyance of Clark to Sluyter, in October, 1852, the block is conveyed as of 920 feet in depth; of course, to the original line of "the Fourth avenue,"—the hundred feet wide "Fourth avenue;" which most people knew to be the only "Fourth avenue." How then can it be inferred, that when he received the conveyance from McGown, he relinquished his right to what the judgment gave him? Here is an express assertion of his right, in opposition to a very equivocal omission of words, which were merely explanatory, and which left the term "the Fourth avenue," without those words in McGown's deed, to say the least, as capable of one interpretation as the other. Clark knew, I presume, if he had dedicated the land to the public use, and was content to accept the block from McGown, bounded by the contemplated line of the Fourth avenue, as directed to be widened by the act of 1837, its depth from the Third to the Fourth avenue would be only 900 feet.

The mere circumstance that the conveyance from McGown to Clark did not specially refer to the judgment, and that there seemed to be some deviation from it in other respects, is a very insufficient reason for concluding that he was willing to depart from the substance of the judgment, so essentially, as to abandon, without any apparent consideration or compensation, or

adequate motive, a considerable portion of the property to which it entitled him.   The only safe rule, and the only rule by which the constitutional right to private property can be preserved, is to reject all doubtful claims of dedication; and, for my part, I would reject 'any claim not considerably more explicit than this.

If we are not willing to forget where we are—that we are living under a political *régime*, which regards private property as most sacred and inviolable, and that we are not living in the meridian of St. Petersburgh or Grand Cairo, we should in all cases insist, as this court at general term in this district has before insisted, that a constructive dedication can only be effected by clear, unequivocal, and decisive acts of the owner, amounting to the explicit manifestation of his will to make a permanent abandonment of the thing dedicated.

For these reasons the order confirming the commissioners' report should be reversed.

I fully concur with my brethren on the other questions presented in this matter.

Order affirmed.

---

## ABBOT *a.* THE HARD RUBBER COMPANY.

*Supreme Court, First District; Special Term, October,* 1860.

### Corporation.—Power of Directors.

The directors of a corporation have no power to sell the entire movable property of the corporation ; and such a sale made by them, is void as against such stockholders as do not assent.

In an action by a stockholder to set aside such sale, an injunction should be granted, and a receiver should be appointed.

Motion for an injunction, and appointment of a receiver.

In the voluminous moving papers of the plaintiff, it was shown that, in 1850, Charles Goodyear, who had then recently